## EDWARDS v. WASHINGTON FIDELITY NAT. INS. CO.*

No. 14053.

Court of Appeal of Louisiana. Orleans.

April 18, 1932.

Harry R. Cabral, of New Orleans, for appellee.

R. Gauche and A. A. Calongne, both of New Orleans, for appellant.

WESTERFIELD, J.

This is a suit by a beneficiary to recover the proceeds of two industrial life insurance policies issued by the defendant company on the life of his wife on January 27, 1930, and February 3, 1930, respectively. The petition alleges that the insured died on July 14, 1930; that all premiums had been paid, and that the premium receipt books, together with proper proof of death and the policies had been surrendered to the company which refused to pay.

Defendant filed an exception of prematurity and general denial.

Plaintiff then filed a motion for a writ of subpoena duces tecum which was granted, and the policies, premiums receipt books, and doctor's and undertaker's certificates of death, furnished upon the blanks of the company, were filed in court by the defendant.

On April 30, 1931, plaintiff filed a supplemental petition setting forth the respective dates that the policies were issued, their numbers, and their face values, he being unable to do this at the time the original petition was filed, because defendant had refused to return the policies to the plaintiff's attorney. It was necessary for him to remit a portion of the face value of the policies in order for the city court to retain jurisdiction.

On May 18, 1931, defendant filed a supplemental answer again urging its plea of prematurity, denying liability and specially pleading fraud on the ground that either the insured or beneficiary had fraudulently substituted an unknown healthy woman to the insurance agent who wrote the application and caused the policies to issue, in the place and stead of the insured and deceased, who was, at the time of the examination and issuance of the policies in a very bad state of health; and, therefore, that the policies were not issued upon the life of the deceased, Corinne Edwards.

There was judgment below in favor of defendant dismissing the suit, and plaintiff has appealed.

The evidence shows that the defendant is engaged in the industrial life insurance business; that it issued the two policies sued upon without any medical examination; that the premiums covering both contracts were promptly paid, and that Corinne Edwards was the wife of Frank Edwards, the plaintiff, who was named as beneficiary of both policies. She died at her home on July 14, 1930, of lobar pneumonia and septic meningitis. The company was notified of her death and furnished plaintiff with an attending physician's certificate and an undertaker's certificate of death, these being the regular blank forms of the company. The doctor filled out the physician's certificate of death, and the undertaker who interred the remains of the deceased filled out the undertaker's certificate of death. These documents gave the name and address of the deceased, her age, cause and date of death, and description of deceased. These papers are dated July 15, 1930, and were filed with the company, together with premium receipt books and the two policies. Then followed certain correspondence and conferences between plaintiff's attorney and defendant company, commencing on July 17, 1930, and running through September 22, 1930, in which the company insisted that additional proof of loss, in the form of an employer's certificate and a beneficiary's certificate, was required, and counsel for plaintiff, as he testified, insisting that the policies be returned in order that he might have the employer's and beneficiary's

*Rehearing denied May 2, 1932.

certificates properly filled out, which request the company refused to comply with. Suit was then filed on October 7, 1930, and the motion of subpœna duces tecum was filed on November 5, 1930, and the policies, premium receipt books, and death certificates were filed in court by defendant.

■ We shall first take up the exception of prematurity. The policy for $71.25 contains the following relevant provision: "The company does hereby agree * * * to pay * * * after satisfactory proof of loss has been submitted to the company. * * * " .

The policy for $276 contains this clause: "Proofs of death shall be made upon blanks to be furnished by the company and shall contain the answer to each question propounded to the claimant, to physicians and to other persons, and shall contain the record, evidence and verdict of the coroner's inquest, if any be held. All the contents of such proofs of death shall be evidence of the facts therein stated in behalf of, but not against the company."

Counsel for plaintiff contends, first, that the physician's and undertaker's certificates of death were upon the blanks furnished by the insurance company and were sufficient compliance with the above provisions, and that it was unnecessary to fill out the employer's and beneficiary's certificates; and, second, that the company's refusal to return the policies, premium receipt books, the attending physician's and undertaker's certificates, in order that the two requested certificates might have been filled out, relieved plaintiff of the necessity of submitting further proof of loss; and, third, that, as the defendant took the position that the policies were issued through fraud and that there is no valid contract, and refused to pay the claim, it was useless and unnecessary to make the preliminary proofs of loss.

The general statement of law is found in Corpus Juris, Verbo "Life Insurance," volume 37, pages 557 and 558, as follows: "Form and Contents. Where the policy provides as a condition precedent to the right of action thereon that due notice and proof of death shall be given, the condition can only be complied with by furnishing to the company such reasonable evidence of the death of the insured as will give assurance that the event has happened. The requirement as to the proofs of death does not necessitate direct evidence, but only such proof or showing as ought to be satisfactory, and there is no precise standard for determining what is satisfactory proof of death. While the proof of death need not be that full, clear and explicit proof which would be required upon the trial of an issue upon the question, yet where it does measure up to this standard, it will be held sufficient. The company has no right to demand of a claimant under a policy more information concerning the death of the insured than is called for by the terms of the contract, or is required by the known and established usages of the insurance business."

We feel that the defendant's request that the plaintiff, as beneficiary, fill in a claimant's certificate, and, also, have the deceased's employer fill out an employer's certificate of death, was a reasonable request, as this information would be necessary to determine its liability and to properly identify the beneficiary. But the company acted unfair and unreasonable in withholding the policies, premium receipt books, and the attending physician's and undertaker's certificates of death. Plaintiff's counsel had the right to have these documents before him in assisting in filling out the claimant's certificate and employer's certificate.

However, we need not concern ourselves with the question whether or not the proof submitted was sufficient or whether or not the company waived its right by refusing to return the policies and documents in connection with them, because we are convinced that, at the time the suit was filed on October 7, 1930, defendant had determined to decline liability on the policies on the ground of fraud; consequently, it would have made no difference if the beneficiary's certificate and the employer's certificate had been filed with the company.

Mr. Rome, the agent and collector of the company, testified that in the early part of September, 1930, he discovered that the woman whom he had insured as Corinne Edwards was still alive, although she was supposed to have died on July 14, 1930. This information was given immediately to the company. It employed a detective by the name of Johnson to investigate Rome's statement, and from his investigation he concluded that the woman insured by Rome was still alive. Therefore, we are satisfied that defendant had no intention of paying the policies, and further proof of loss would have been merely a vain act.

In the case of Tarver v. People's Fire Insurance Co., 6 Orl. App. 59, it was held that, where the insurer denied liability on the ground that no valid contract existed and refused to pay, it was useless and unnecessary to make the preliminary proofs of loss.

We conclude that the exception of prematurity was properly overruled.

■ Taking up the defense that a fraud had been perpetrated upon the company by the plaintiff or the deceased, Corinne Edwards, by substituting a healthy young woman for the purpose of having the agent observe her and issue the policies, because, at that time, the Edwards woman was in ill health, we observe that the defendant sought to establish this special defense by the testimony of one witness, their agent and collector, Mr. Rome. He testified that a woman

who represented herself as Corinne Edwards signed the applications for insurance by making her mark, and that, as she was a strong, young woman, weighing about 190 pounds, being 5' 4" tall, he accepted the risk and caused the policies to be issued; that he called at the residence of the woman every Monday morning and collected the premiums, and that the same woman each Monday morning paid the premiums for the period of January 27, 1930 to July 14, 1930; that he went to the rear of the place through an alley and the money was handed to him in the rear of the house: that he was positive that a young negro woman who was brought into the courtroom by the name of Alma Williams was the party whose life he had insured; that he reported to the company that he saw the woman he knew as Corinne Edwards alive after her alleged death, and that a detective by the name of Johnson was employed to investigate the matter.

Johnson testified as a witness for defendant, but his testimony is practically worthless because it is based upon hearsay and the correctness and truthfulness of the testimony of Rome because he assumed that Rome told the truth when he stated that the party he identified as Alma Williams had represented herself as Corinne Edwards.

Plaintiff, in order to contradict this evidence, offered the testimony of the attending physician, the undertaker, his brother-in-law, his niece, Alma Williams, and himself. The doctor testified that the disease of lobar pneumonia and septic meningitis acted quickly and suddenly, and that it was not of slow development. Defendant's counsel on cross-examination sought to show that the deceased was suffering from tuberculosis, but the doctor stated that in the five or more visits that he made he found that the plaintiff's symptoms were those of the disease he gave as the cause of death and not the symptoms of tuberculosis. The doctor and the undertaker both identified the body as the remains of the insured. Plaintiff's brother-in-law, his niece, Alma Williams, and himself testified that when the agent called for the collection of the premiums that the insured personally paid the premiums most of the time, and that Corinne Edwards had, not only taken out the two policies on her own life, but had also taken out a small policy on her husband's life, the plaintiff in this case. They were corroborated by the production of the policy. Alma Williams flatly contradicted the agent's statement that she ever had any conversation with him about insurance or represented herself as Corinne Edwards, stating that she lived at a different address in the city.

A careful consideration of the evidence of all the witnesses leaves us with the positive conviction that the defendant has not sustained the burden of proving by a preponderance of the evidence its special defense of fraud. Counsel for defendant apparently realized the lack of sufficient evidence to prove the defense, and calls our attention to what he considers circumstantial evidence. For instance, Alma Williams testified that about June, 1930, she visited some friends in Bogalusa for six weeks. We pause to remark that it would have been physically impossible for Rome to have collected the premiums from her every Monday morning in New Orleans as he testified, if she was in Bogalusa. It is argued that she absented herself because she knew the grave and serious condition of her aunt's health and wanted to be away at the time she died so as not to arouse suspicion. He further points out that she did not go to the funeral, but stayed at her uncle's home that day. The evidence shows that Alma Williams returned to the city of New Orleans about two weeks prior to the time her aunt died, and that she went to her uncle's home where the body was awaiting burial. She explained that the only reason she remained away from the funeral was to stay with her uncle, the plaintiff, who was paralyzed. Therefore what might have appeared to be circumstantial evidence of fraud is explained in a reasonable and plausible way.

Counsel for defendant further points out that when the attending physician, who testified that he treated the case merely as a matter of humanitarian consideration, attempted to fill in the certificate of death, he gave the name of the deceased as Anna Jones, and he says that it was this circumstance which first caused the company to become suspicious that this was a spurious claim. Osory Jones, the plaintiff's brother-in-law, clarified this apparent error by stating that his sister's maiden name was Jones and that the doctor had erroneously written it Anna Jones, then struck it out with the pen, and inserted her correct marriage name.

After a careful reading of the record, we are of the opinion that the judgment of the trial court is erroneous.

For the reasons assigned it is ordered that the judgment appealed from be, and it is, annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff, Frank Edwards, and against the defendant, Washington Fidelity Insurance Company of Chicago, Ill., in the full sum of $299, with legal interest from judicial demand until paid. Defendant to pay all costs of court.

Reversed.