162 So. 633

# FREY v. MANHATTAN LIFE INS. CO. OF NEW YORK.

## No. 33346.

May 27, 1935.

Rehearing Denied July 1, 1935.

Thornton, Gist & Richey, of Alexandria, for appellant.

Hawkins & Pickrel, of Lake Charles, for appellee.

ODOM, Justice.

The defendant issued to plaintiff two life insurance policies, one for $3,000 and the other for $2,000, each dated December 4, 1928. The policies are identical in terms except as to amount, and contain the following stipulations which are pertinent to the issues here involved:

"(1) And upon receipt of due proof that the Insured is totally and presumably permanently disabled before age 60, the Company agrees to pay to the insured Thirty (Twenty in the $2,000.00 policy) Dollars monthly during such disability, increasing

after five and ten years of continuous total disability, and to waive the payment of premiums, all subject to the terms and conditions contained in the 'Disability Benefits' clause on the second page hereof.

"(2) Disability shall be deemed to be total and permanent whenever the Insured becomes totally disabled by bodily injury or disease so that he is then and presumably will be thereby continuously prevented for life from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the payment of one full year's premium on this Policy and prior to its anniversary on which the Insured's age at nearest birthday is 60 years.

"(3) Upon receipt at the Company's Home Office, before default in payment of premium, of due proof that the Insured is totally disabled as defined above and will be continuously so disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability but establishes the fact that the Insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined the Company will during the continuance of such total disability grant the following benefits:

"(4) (1) *Increasing Income Payments.*— The Company will pay to the Insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this Policy) for each completed month from the commencement of and during the period of such continuous disability. The amount of the monthly income shall increase after sixty consecutive monthly payments have been made to one and one-half times such amount, and after sixty further consecutive monthly payments have been made to twice such amount. If disability results from insanity, payment will be made to the beneficiary in lieu of the Insured."

The policyholder brought this suit in March 7, 1934, alleging that on or about June 1, 1931, he became totally and permanently disabled on account of bodily disease from performing any work, following any occupation, or engaging in any business for remuneration or profit and that he will be continuously so disabled; that upon becoming so disabled he furnished the insurer with due proof of his permanent and total disability and demanded the monthly disability benefits provided for in the policies, which benefits the company refused to pay.

He prayed for judgment against the company for $50 per month, or $10 per month for each $1,000 of insurance carried, for a period of 29 months, or $1,450, plus the penalties for delay in making payments as required by section 3, Act No. 310 of 1910. He further prayed for judgment against the company for $513.90; this being the total of three annual premi-

ums on the policies which he had paid since he became totally disabled, with interest and reasonable attorney's fees.

The insurance company's defense was that plaintiff had never furnished it with due proof that he was totally disabled for life, and that as a matter of fact he was not at the time the suit was filed and had never been totally disabled, and further that even though it be held that he was or had been totally disabled, he cannot recover unless the proof submitted shows, or is sufficient to raise a reasonable presumption, that he will be disabled for life, and that neither the proof submitted to it prior to the filing of the suit nor the testimony adduced at the trial was sufficient to show, or to raise a reasonable presumption, that plaintiff's disability is permanent. In paragraph 13 of defendant's answer it is alleged: "That this plaintiff has not made due proof to said defendant company that he is totally and permanently disabled and will be continuously so disabled for the remainder of his life."

The trial judge found and held that plaintiff was entitled to the disability benefits at $50 per month for 29 months, or a total sum of $1,450, with interest on the deferred payments, plus the amount of premiums paid for three years, or $513.90, and rendered judgment accordingly. He rejected plaintiff's demands for penalties and attorney's fees. From this judgment defendant appealed. Plaintiff answered the appeal and prayed that the judgment be amended by allowing the penalties and attorney's fees.

(1) The testimony shows that plaintiff was at the time this case was tried, and had been since the latter part of 1929, totally disabled by bodily disease from "performing any work, from following any occupation, or from engaging in any business for remuneration or profit," as those terms are ordinarily used and understood and as they are universally interpreted by courts.

Plaintiff was slightly over 25 years of age when the policies were issued on December 4, 1928. He was then a farmer doing ordinary farmwork on his own land. He was energetic, frugal, and prosperous. In September, 1929, less than a year after the policies were issued, he became ill and called Dr. R. C. Webb, a physician. Dr. Webb's diagnosis was "malarial fever, hermaturia, chills, fever, blood in urine, albumin and casts." Dr. Webb found that he was not at that time able to carry on any gainful occupation. At the trial Dr. Webb was asked if the plaintiff was able to work at that time, and he said: "He had been working, but he certainly was not able to work at that time."

Dr. Webb referred the patient to Drs. Walther & Willoughby of New Orleans, who treated him in December, 1929. They found that "he had right-sided ureteral stone near bladder." The treatment administered consisted of "dilation to lower ureter through cystoscope; he received two

such treatments, one on December 10, 1929, and a second on December 19, 1929; at first treatment the ureter was obstructed, at the second, a catheter passed easily to the kidneys; the stone had passed. Diagnosis had been confirmed by X-ray."

A number of physicians examined and some treated plaintiff later, and without exception they stated that after the stone was removed from the kidneys the patient was afflicted with "pyelitis," which is an infection of the kidneys, from which affliction he has never recovered. Dr. G. P. Garland, who administered cystoscopic treatments for the infected kidneys, and who examined him just before the trial, was of the opinion that plaintiff's disease had become chronic and that his disability was permanent. Dr. C. W. Lewis examined him first in 1931 and found him suffering from pyelitis caused by stones or recurrent stones in the kidneys, and said that he was totally disabled. He examined him just prior to the trial and found no improvement in his condition. He said that disability was permanent, but on cross-examination qualified his statement by saying that he was "not in position to say whether the man will be permanently disabled all his life, but at the present time he is."

Dr. S. R. Henry testified that plaintiff's urine was full of blood and pus, which indicated pyelitis. On being asked his opinion as to whether plaintiff's condition is permanent, he said: "If his future treat-ments are like his past treatments, I would say it would be a permanent disability."

Dr. H. L. Gardiner treated plaintiff about December 6, 1931, at which time he found him suffering excruciating pain, and gave him a hypodermic of morphine to relieve him. On being asked whether the patient was disabled at that time, he said, "Yes, very much so."

Dr. L. A. Clark, called by defendant, testified that he was requested by the insurance company to examine plaintiff on or about October 15, 1931, and that he found him suffering from chronic pyelitis, and that he was totally disabled at that time. He said, however, that his disability was not necessarily permanent; that a "big percentage" of those similarly afflicted recovered. Dr. H. M. Foster, also called by defendant, was of the same opinion.

The physicians who treated plaintiff testified that the infection of the kidneys had become chronic, and that in his weakened condition the usual and necessary treatments for such disease brought on chills and high fever, and a number of lay witnesses testified that while they had seen plaintiff doing light work about the house, yet they had observed that when he attempted to do ordinary farm work he became ill, was forced to take to his bed and remain there for weeks at a time.

The testimony leaves us in no doubt that from September, 1929, to the time of the trial of the case in June, 1934, plain-

tiff was continuously totally disabled on account of this bodily disease from performing ordinary farm labor or from following any other gainful occupation.

But the testimony does not conclusively show that plaintiff's disabled condition is permanent; that is, will continue for the rest of his life. Some of the physicians were of the opinion that inasmuch as the patient was suffering from chronic pyelitis which had, over a period of almost four years, failed to yield to the ordinary approved treatments, his disability was probably permanent. But as to the permanency of the disability they were not certain because in some such cases the patients finally recovered.

The company refused to pay the disability benefits because the proof submitted did not show that the disability was permanent. Dr. Barber, chief medical adviser for the company said: "The diagnosis above does not necessarily constitute a permanent disability." Mr. Philip J. Ross, chief counsel for the company, wrote plaintiff that "Regardless of whether your present disability is total or not, within the meaning of the policy provisions, it does not appear that it should be permanent and is not deemed at the present time to be permanent." In a letter to plaintiff's counsel dated February 23, 1933, after the company had received reports from plaintiff and several physicians that he was totally disabled, Mr. Ross said: "After full consideration of the matter, the company is of

the opinion that the insured is not totally and permanently disabled for life, but if at any time he will submit to the very common and usual operation in such a case he can be restored to health."

We are not impressed with the argument that under the conditions here shown to exist and which were made known to the company, and especially under the plain and unambiguous terms of the policy, it was necessary that plaintiff prove conclusively that he would be disabled for the remainder of his life in order to receive the disability benefits. The proofs submitted by plaintiff showed total disability and were such, we think, to raise a reasonable presumption that his disability will continue.

For a period of almost four years plaintiff had been afflicted with a malady which had not only totally disabled him, but had failed to yield to the best medical treatment he could get.

Whether disability brought on by bodily disease is permanent or temporary is necessarily a matter of opinion. The best medical experts are sometimes convinced from conditions found in the early stages of a disease that recovery is not likely, whereas, later on, unexpected changes develop showing that they were mistaken. It is a fact well recognized that total or partial recovery does in some cases occur when at first the disease seemed to be fatal. In cases of disease, future developments may show that seemingly permanent disability

resulting from it may in fact be only temporary and vice versa.

■■■ Where, under a policy which contains provisions for disability benefits like those quoted above, the policyholder makes proof that he is, and has been for a long period of time, totally disabled from bodily disease, the insurer must accept the apparent proofs of the permanency of the disease and make payments accordingly. It must give to the insured the benefit of his disabled condition while it lasts, and not wait until the end of his life to find out whether disability is permanent. That would deprive the insured of the very benefits which the policy guaranties.

The policy itself is the contract between the parties, and its various clauses must be construed together in order to understand its meaning. Clause (2) of the policy, as above quoted, says "Total and permanent" disability means "totally disabled by bodily injury or disease so that he is then and presumably will be thereby continuously prevented for life from performing any work," etc. But clause (3), as numbered above, shows conclusively that in cases where disability results from bodily disease, it was not intended that in order to receive these disability benefits, the insured should be required to make conclusive proof of the permanency of his disability. That clause reads as follows:

"Upon receipt at the Company's Home Office before default in payment of premiums, of due proof that the Insured is totally disabled as defined above and will be continuously so disabled for life, *or if the proof submitted is not conclusive as to the permanency of such disability but establishes the fact that the insured is, and for a period not less than three consecutive months preceding receipt of proofs, has been totally disabled as above defined,* the company will during the continuance of such disability grant the following benefits." (Italics ours.)

Then follow the provisions for the payment of $10 per month for each $1,000 of insurance and the waiver of premiums during the continuance of total disability.

There is not the slightest ambiguity in this clause, nor does it conflict with the others. It means, for that is what it says, that if the proof submitted is not *conclusive* as to the *permanency* of the disability, but establishes the fact that the insured then *is* or has been totally disabled for a certain period, the company will pay the benefits during the continuance of the disability.

It is perfectly clear that it was not contemplated that the insurer might withhold from the insured these disability benefits until he could make conclusive proofs of the permanency of his disability. To so hold, the court would have to delete from the policy contract the last-quoted clause, or hold that it is meaningless.

The policy contracts specifically reserve to the insurer the right to discontinue the payment of the benefits and to require a

resumption of the payment of premiums on the policies, in case total disability should cease, or in case the insured should fail to furnish proof of continued disability. Clearly therefore it was contemplated that there might be intermittent periods of total disability during which the payments were to be made, and that upon a cessation of the disability the payments would cease.

▇ Under the showing made by plaintiff, he is clearly entitled to recover the benefits provided for in the policy. Furthermore, he is entitled to penalties as required by Act No. 310 of 1910. The company had ample notice that plaintiff's condition was such as to entitle him to the benefits.

Dr. Barber, chief medical examiner for the defendant company, wrote Dr. L. A. Clark, on November 21, 1931, asking about plaintiff's condition. In the letter he stated: "We note you state that Mr. Frey (the insured) says that he has been unable to do any work since June 1931. We will ask you, inasmuch as you have known him for some time, if in your opinion he is able to do any work at this time." Dr. Clark's reply, dated November 25, 1931, was as follows: "In my opinion Mr. Frey is not able to do any work at this time. His urine is still loaded with pus."

On September 24, 1931, Dr. A. R. Morgan made report to the defendant company in which he stated: "Renal stone removed December. Recurrent pyelitis ever since. Chronic pyelitis with renal calculi. Prognosis, poor." This report seems to have been made on a blank questionnaire sent to him by the company. The following questions were asked and answered therein:

"Q. To what extent in your opinion is the insured able to work on any gainful occupation? A. None.

"Q. Is it your opinion that any disability now existing will be permanent? A. Probably not."

On May 31, 1932, Dr. Morgan filled out and sent to the company another questionnaire giving a "complete clinical history" of the case in which he stated: "Any work or exercise at all brings on attacks of renal colic followed by severe pyelitis and cystitis." He was asked, "Do you believe claimant is now able to follow any gainful occupation?" He answered, "No."

If the defendant company received any information that the plaintiff's total disability had ceased, the record fails to show it. Yet for a period of more than two years after its own physician had finally certified under oath that plaintiff was totally disabled, the defendant refused to pay disability benefits and plaintiff was finally compelled to bring this suit in order to obtain the benefits guaranteed by the policies.

Section 2, Act No. 310 of 1910, requires that payments under such policies as this "shall not be delayed for a longer period

than thirty days from due notice and proof of disability, without just and reasonable grounds such as to put a reasonable and prudent business man on his guard," and section 3 of the same act reads as follows:

"That the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty, double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted."

Dr. Morgan's final certificate to the company was issued on May 31, 1932. Prior to that date the company had received from physicians other certificates of similar import, and had received statements from the plaintiff that he was totally unable to work. But giving the defendant company the benefit of a reasonable doubt and assuming that these earlier reports were not sufficient to show total and continuous disability, certainly after it received Dr. Morgan's certificate of May 31, 1932, it then had no "just and reasonable grounds" for delaying payment. It must therefore pay the penalties for its delay after that date. The penalty exacted is "during the period of delay." We give the defendant the benefit of all reasonable doubt and fix May 31, 1932, as the date from which the penalties run. Plaintiff is also entitled to reasonable attorney's fees, which we fix at $300.

Counsel for defendant cite and rely principally on the cases of Lewis v. Metropolitan Life Insurance Company, decided by the Court of Appeal, Second Circuit, and reported in 142 So. 262, and Ginell v. Prudential Insurance Company, 237 N. Y. 554, 143 N. E. 740, which the Lewis Case followed.

But those cases find no application here because in neither did the policy under consideration contain a provision identical with or even similar to the following, which is contained in the policies here under consideration, to wit: "If the proof submitted is not conclusive as to the permanency of such disability but establishes the fact that the insured is, and for a period of not less than three consecutive months immediately preceding receipt of proofs, has been totally disabled, as above defined, the company will during the continuance of such disability grant the following benefits."

The policies involved in this suit are much more liberal toward the insured than those considered in the cases cited. They were no doubt intended to be, because the insured in this case was paying an additional premium of about $4.22 per thousand for the additional benefits, whereas the insured in the Lewis Case was paying an additional premium of only $.77 per thousand and in the New York case only $.44 per thousand per annum.

We have read many of the other cases cited by counsel and find that in neither

of them did the court have before it a case where the policy contained such a provision.

Counsel for plaintiff argue that the penalty alone for delay in making payments is double the amount due, or $20 per month for each $1,000 of insurance in addition to the amount stipulated in the policy. In other words, if plaintiff is entitled to the penalties, he should receive $30 per month or three times the amount stipulated in the policies. We do not so construe the statute. As a penalty for delay the insurer must pay, not the amount called for by the policies, but twice that amount, or $20 per month for each month during the delay, instead of $10 per month for each $1,000 of insurance.

For the reasons assigned, the judgment is amended so as to allow attorney's fees at $300, and further amended so as to allow the penalty from May 31, 1932, and, as thus amended, the judgment is affirmed.