## PETE v. METROPOLITAN LIFE INS. CO.
### No. 1671.

Court of Appeal of Louisiana. First Circuit.
Jan. 12, 1937.

Jackson & Smith, of Sheveport, for appellant.

Robt. R. Stone, of Lake Charles, for appellee.

OTT, Judge.

The plaintiff is a colored man, about 46 years old, and for several years prior to September 30, 1933, had been in the employ of the Kansas City Southern Railway Company as a section laborer. This railroad secured from the defendant insurance company a group policy covering its employees, including plaintiff, who was insured in the sum of $1,000, the premium, as is usual in such policies, being paid jointly by the employer and the employee. This policy contained a provision that this $1,000 would be paid to the plaintiff in twenty equal installments of $51.04 if, during the time the policy was in force and effect, he became totally and permanently disabled as a result of bodily injury suffered or disease contracted prior to his

sixtieth birthday, so as to become permanently, continuously, and wholly prevented from performing any work for compensation or profit.

Plaintiff alleges that on or about the 10th day of May, 1933, while said policy was in force, and while he was helping unload a car of sand, he sprained or strained his back while working as section hand for said railroad; that he was sent to a doctor by the railroad and laid off from work on account of his condition, during which time he collected 13 weeks on his health policy; that he went back to work on September 5, 1933, but could not do his work on account of the condition of his back, which had not recovered from the sprain suffered; that he was sent to the railroad hospital by the railroad doctor for an examination, where his complaint was pronounced arthritis of the spine, progressive in its nature; and that he was discharged from the service of the railroad on September 30, 1933, as physically unfit to perform work required of a section laborer. He averred that he had filed proof of his disability with the defendant insurance company, and had complied with all requirements under the policy, made demand for payment, but said claim was rejected. He asks for a judgment for the amount of his certificate, $1,000, with legal interest thereon from September 30, 1933.

Defendant admitted the issuance of the policy and admitted the payment of 13 weeks' disability on account of plaintiff's illness, but averred that plaintiff went back to work on September 5th and did hard manual labor until he was discharged on September 30, 1933, on which date the policy was canceled; that plaintiff did not become totally disabled during the time said policy was in effect and was not totally and permanently disabled when the suit was filed.

Judgment was first rendered rejecting plaintiff's claim on the ground that he had failed to show that proof of his disability had been made as required by the policy. On application being made by plaintiff for a rehearing, the case was reopened to permit plaintiff to prove that he had furnished proofs of his disability, whereupon the plaintiff filed in evidence the correspondence and documents pertaining to this proof. The trial judge held that the proof furnished the company was insufficient, but, believing that plaintiff should be given a chance to furnish additional proof

to the defendant of his disability, the judgment was changed so as to dismiss plaintiff's demands as in case of nonsuit. Defendant has appealed from this judgment of nonsuit, contending that the judgment should have been final. Plaintiff has answered the appeal and has asked that judgment be rendered in his favor as prayed for in his petition.

Plaintiff introduced no evidence on the first hearing to show that he had submitted to the company proofs of his disability as required by the terms of the policy, but on the rehearing he introduced in evidence the statements made out by plaintiff, Dr. Watkins who had treated him, the superintendent of personnel of the railroad, together with a memorandum made on one of the blanks by the doctor who examined plaintiff at the railroad hospital. These statements were made on blanks furnished by the defendant company. There is also in evidence certain correspondence relative to the claim and the proofs submitted thereunder.

On March 19, 1935, in response to a demand made on it by counsel for plaintiff, defendant wrote a letter, inclosing claim blanks to be filled out and submitted, suggesting those who should fill out these blanks, but in the same letter the defendant stated that the insurance was canceled when plaintiff's employment with the railroad was terminated. These statements were filled out—one by plaintiff, one by Dr. Watkins, one by the superintendent, and an unsigned memorandum was made on one of these blanks by the railroad hospital doctor. These statements were forwarded to the defendant company by counsel for plaintiff on April 15, 1935, with a full explanation.

On June 18, 1935, more than two months after this proof had been mailed as stated above, the defendant company wrote counsel for plaintiff, rejecting the claim in the following language: "The reports we have received do not establish the existence of a total and permanent disability while the disability provision was in force. Further, it is not apparent that such a state of incapacity even now exists. We have established that Mr. Pete, after his services with the Kansas City Southern Railway Company terminated, and subsequent to the cancellation of his insurance and the termination of the total and permanent disability provision, worked, which fact in itself would negative any claim that he be-

came both totally and permanently incapacitated while the disability coverage was in effect. We are sorry but in the circumstances we would not be permitted to allow indemnity."

■ It will be seen from the above-quoted letter that the defendant made no request for further proof as to the disability, but rejected the claim on the ground that the policy was canceled on September 30, 1933, and that the evidence which the company had secured showed that plaintiff was not disabled during the time the policy was in force, but that plaintiff had worked after the policy was terminated, which, in itself, would negative any claim that he became totally and permanently disabled while the policy was in force. For the reasons given, the claim was finally rejected. As no suggestion was made for further proof, there was nothing else for plaintiff to submit. Any further submission of proof would have been a waste of time and only an idle gesture, as the claim had been finally rejected.

The only thing left for plaintiff to do was to submit his claim to the courts, which he has done, and which he had a perfect right to do. For surely the defendant cannot set itself up as the final arbiter as to whether plaintiff has a valid claim under the policy. Having denied liability both in the letter rejecting the claim and in the answer to the suit on the ground that plaintiff has no valid claim on the facts as defendant claims them to be, the matter now rests with the courts to decide.

■ The law on this point is clearly and correctly stated in Ruling Case Law, vol. 14, p. 1349, § 522, verbo, Insurance, as follows: "The weight of authority is in favor of the rule that a distinct denial of liability and refusal to pay, on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proof of the loss or death. It is equivalent to a declaration that the insurer will not pay though the proof be furnished. The preliminary proof of loss or death required by a policy is intended for the security of the insurers in paying the amount insured. If they refuse to pay at all, and base their refusal upon some distinct ground without reference to the want or defect of the preliminary proof, the occasion for it ceases and it will be deemed to be waived." See, also, Edwards v. Washington Fidelity Nat. Ins. Co. (La. App.) 141 So. 97.

The trial judge was in error in holding that plaintiff had not submitted sufficient proof to the defendant before filing suit. Certainly nothing could be gained by requiring plaintiff to do something which defendant had indicated would be of no use whatever and which defendant has never requested or suggested that plaintiff do in furnishing any further proof than he had already furnished. The position taken by defendant renders it necessary for the court to pass on the validity of plaintiff's claim and to determine whether the evidence which he has offered in his suit, and not what he offered in his proofs, is sufficient to justify a recovery on his part.

■ Plaintiff testifies that in June, 1933, while he was helping unload a car of sand, pushing a boxcar with a pinch bar, he strained his back and hurt his finger; that he tried to continue work, but the pain became so severe that he could not work and the foreman sent him to Dr. Watkins, the railroad doctor; that afterwards he became worse and was sent to the railroad hospital at Shreveport; that he tried to go back to work in September but could not do much work, and the foreman again laid him off and he was sent to the hospital in Shreveport. The last day he worked for the railroad was September 30, 1933; he was sent to the hospital shortly after that in October.

On February 12, 1934, the division engineer of the railroad wrote plaintiff a letter in reply to a letter written by plaintiff on December 26th preceding, in which letter the railroad advised plaintiff that his service with the railroad was considered as having terminated on September 30, 1933, on account of his physical inability to perform the work required of a section laborer. Dr. Watkins testified that plaintiff came to him in June, 1933, complaining a great deal of pain in the back; that plaintiff was walking with crutches, stooped over and deformed. Plaintiff stated to the doctor that he had received an injury while he was working; that plaintiff came back to him for treatment in September, 1933, with the same complaint; that he examined plaintiff and thought he had some form of arthritis; that after plaintiff returned from the hospital he found him in the same condition. The doctor says that plaintiff was disabled from doing any kind of manual labor in the summer of 1933 and in September

when he examined him; that he had recently examined an X-ray picture of plaintiff which showed arthritis of the right hip joint. The doctor says that a strain could make the condition worse; that is, activate an already existing condition and make the patient believe that the strain caused the pain which results from the arthritis. The X-ray picture shows that plaintiff is totally disabled. As to the duration of the condition, the doctor says that arthritis is progressive in its nature and will get worse unless the cause is removed, if it can be removed.

Defendant attempted to prove that plaintiff has worked since he was discharged by the railroad. The E. R. A. foreman testified that plaintiff had worked for him from June to October, 1934, digging pits for sanitary toilets about nine days per month. But this witness says that plaintiff had to be helped out of these pits when about three feet down; that he then looked just like he does now, and, in his opinion, plaintiff was in a pretty bad fix and unable to do a hard day's work. Another witness says that plaintiff cut two cords of pine wood for him in the fall of 1934, but that it took plaintiff 2 months to cut this wood when a good man could have cut it in 2 days. All the time that plaintiff was cutting this wood he was complaining and did not work all the time. The time keeper on a WPA job says that plaintiff has been working for him part time since December 10, 1934, breaking up slabs for use in repairing sidewalks. But plaintiff would sit down to do this work, and this witness testified that he did not think plaintiff was able to do a day's work.

From this testimony we have no difficulty in reaching the conclusion that plaintiff has been totally and continuously disabled from doing any regular manual labor since the summer of 1933. His efforts to work only go to show his incapacity for hard work. He is not to be penalized for the faithful effort which he has made to earn a bare subsistence. The condition in the policy providing for the payments in the event plaintiff becomes totally and permanently disabled from performing any work for compensation or profit does not mean that plaintiff must, in order to avail himself of these benefits, become absolutely helpless, but merely requires such disability as renders him unable to perform the substantial and material part of his occupation in the usual and customary way. Crowe v. Equitable Life

Assur. Society, 179 La. 444, 154 So. 52. The same question was involved and the same clause was under interpretation in policies issued by this same company in the two recent cases of Marshall v. Metropolitan Life Ins. Co. (La.App.) 164 So. 441, and White v. Metropolitan Life Ins. Co. (La.App.) 166 So. 655. On a state of facts showing that the plaintiffs in those two cases, both railroad laborers, were disabled from performing hard manual labor, but who could nevertheless perform certain kinds of work, they were allowed to recover. Those two cases are persuasive in the present case.

It is contended that there is no evidence to show that plaintiff's disability is permanent, even though it is considered total up to the time of filing the suit. But we think the nature and length of plaintiff's ailment, together with the statement of Dr. Watkins that the condition will grow worse, unless the cause is removed, if it can be removed, justifies the presumption that the disability is permanent. Certainly plaintiff would not have to wait until he dies to determine if his disability is permanent. Frey v. Manhattan Life Ins. Co., 182 La. 821, 162 So. 633.

The policy covered disability arising from either accident suffered or disease contracted during the period in which the policy was in force. Whether the disability was caused from accident on account of a strain activating the arthritis, or whether plaintiff was thereby made more conscious and sensitive to his condition, in our opinion, is immaterial. It remains a fact that his disability arose while the policy was in effect, and the subsequent cancellation of the policy would in no wise affect plaintiff's claim, which had already arisen thereunder.

It is claimed that the claim of plaintiff is stale and therefore should be looked upon with disfavor. We do not think so. Plaintiff is an ignorant negro, totally unfamiliar with his rights under the policy and just what his physical conditions should be for him to recover compensation. He was not advised by the railroad of his discharge until February, 1934, and for a few months thereafter he tried to work in order to earn a bare living. His attorney made demand on the defendant in March, 1935, just a little over a year after plaintiff had been informed that he was no longer in the service of the railroad because of his physical disability.

872

There is no time limit in the policy for making proof of disability. The nature of the injury and disease with which plaintiff was affected rendered it difficult to deter-mine the extent and length of his disability. Under the circumstances, we do not find that there was any unreasonable delay in presenting the claim.

■ When the suit was filed, all of the payments were due. But interest cannot be collected until judicial demand was made. We will therefore restrict the interest from judicial demand instead of from September 30, 1933, prayed for as in the petition.

For the reasons assigned, it is ordered that the judgment appealed from be, and the same is hereby, avoided, annulled, and reversed, and it is now ordered, adjudged, and decreed that the plaintiff, George Pete, have and recover judgment of the defendant, the Metropolitan Life Insurance Company, in the full sum of $1,000, with legal interest thereon from judicial demand, and for cost of the suit in both courts.