173 So. 306

## CRATEN v. ÆTNA LIFE INS. CO. OF HARTFORD, CONN.

### No. 34026.

March 1, 1937.

St. Clair Adams & Son, of New Orleans, for appellant.

John C. Hollingsworth and O'Brien & Little, all of New Orleans, for appellee.

O'NIELL, Chief Justice.

Emile Craten brought this suit on an insurance policy, called a group policy, on the lives of the employees of the Uvalde Rock Asphalt Company, to whom the policy was issued. The suit is for a "Permanent Total Disability Benefit," as stipulated in the policy, thus:

"If any employee, before attaining the age of sixty years and while insured hereunder, becomes totally disabled and presumably will thereafter during life be unable to engage in any occupation or employment for wage or profit, or shall meet with the entire and irrecoverable loss of the sight of both eyes or of the use of both hands or both feet or of one hand and one foot, such employee shall be deemed to be totally and permanently disabled. Upon receipt at the Home Office of the [Ætna Life Insurance] Company, during the continuance of insurance on such employee, of satisfactory evidence of such disability, the Company will pay the amount of insurance in force upon such life at the time such disability commenced, in lieu of all other benefits provided for on such life under this policy, by that one of the following optional methods that shall be designated and requested."

On the 20th day of February, 1928, while Craten was an employee of the Uvalde Rock Asphalt Company, and was working at a rock-crushing machine, his left hand got caught in the machinery and badly mangled. In his effort to extricate his hand, the right hand also was caught in the machinery and injured. The only permanent injury to the right hand was a deformity of two fingers and a slight impairment of the strength of the hand. The injury to the left hand resulted in the "entire and irrecoverable loss" of the use of the hand. Craten was sent by his employer first to the Charity Hospital and then to the surgeon employed by the American Casualty Company, the employer's liability insurer, and was treated by the surgeon from February, 1928, until December, 1932. The Ætna Life Insurance Company denied liability under the policy; and, in January, 1934, Craten brought this suit, claiming the amount of the insurance on his life, $1,000, and an additional $1,000, and a reasonable attorney's fee, for the penalties prescribed by section 3 of Act No. 310 of 1910, for delaying payment more than thirty days after

due notice and proof of disability. The insurance company defended on the grounds, first, that the company did not receive "during the continuance of insurance of such employee," as provided in the policy, satisfactory evidence of disability, or receive any evidence or knowledge of the accident or injury to Craten, until receipt of a letter from his attorney, on January 22, 1932; and that the insurance on Craten was canceled on February 28, 1928, after which date no premiums were paid; and, second, in the alternative, that Craten was not totally and permanently, or totally or permanently, disabled, or unable to engage in any occupation or employment for wage or profit. A jury gave a verdict for the plaintiff for the $2,000 sued for, and for $300 for the attorney's fee. The judge overruled the defendant's motion for a new trial, and gave judgment for the amount of the verdict. The defendant has appealed.

It is true that Craten did not notify the insurance company of the accident until January, 1932, when an attorney whom he consulted had him examined by a physician, who reported, in detail, that Craten had suffered the entire and irrecoverable loss of his left hand, and, by reason thereof and of his lack of education, was totally disabled and would never be able to engage in any occupation or employment for wage or profit. It is true also that the policy of insurance required that satisfactory evidence of the disability should have been received by the insurance company at its home office "during the continuance of insurance" on the employee, Craten. But the insurance was never canceled, as far as

Craten's rights were concerned. The "Cancellation Notice," on a printed card furnished by the insurance company, was signed by the secretary and treasurer of the Uvalde Rock Asphalt Company saying that the employment of Emile Craten terminated on the 28th of February, 1928; but the secretary and treasurer testified that, through some oversight in the office of the Uvalde Company, the notice of cancellation of Craten's insurance was not forwarded to the insurance company until about the 19th of April, 1931. The Uvalde Rock Asphalt Company, therefore, paid the premiums, 80 cents per month, on the insurance on Craten until the end of April, 1931, according to the testimony of the party holding the office of secretary and treasurer of the Uvalde Company. But the giving of notice to the insurance company, of the termination of the employment of Craten, by the Uvalde Rock Asphalt Company, did not have the effect of canceling the insurance on the life of Craten, because the cause of the termination of the employment was the permanent and total disability of Craten. On that subject, under the rubric "Individual Terminations," the policy provides that cancellation of the insurance of any employee may be effected upon or at any time after termination of his employment, upon the written request of the employer, filed at the home office of the insurance company; and that the insurance shall cease to be in force at the end of the policy month in which the employment terminated. But, immediately following that paragraph is one which protects employees whose employment is terminated by reason of permanent and total disability, thus:

"If the cause of termination of employment of any employee insured hereunder be permanent and total disability, the insurance upon such employee under this policy shall be continued and such employee shall be subject to the provisions of permanent total disability contained herein."

It is not disputed that the cause of the termination of the employment of Craten was the accident and consequent injury which rendered him unable to do the work for which he was employed. In fact the man who was superintendent of the plant at the time of the accident testified that Craten was a satisfactory workman before the accident, and that he, the superintendent, would have put him back to work after the accident if he had been able to work. Of course, the superintendent did not know, at the time of the termination of the employment of Craten, that his disability would be permanent. Neither did Craten, nor the surgeon who treated him, know, until a long time after the accident, that the loss of the use of Craten's left hand was "entire and irrecoverable." But the fact is, though it was not known at the time of the termination of Craten's employment, that the disability which was the cause of the termination of the employment was permanent and total disability; and, in consequence thereof, and by the very terms of the policy, the insurance continued and the employee remained subject to the provisions of the policy for total disability. What we maintain is that, under a policy like this, if in fact the disability that causes the termination of the employment is a permanent and total disability, the insurance continues and the employee is subject to the provisions of the policy for total disability, even though it may not have been known at the time of the termination of the employment that the disability was total and permanent.

Craten's attorneys pleaded that the insurance company waived the notice required by the policy, by denying liability on the ground only that Craten was not permanently and totally disabled. In all of the correspondence on the subject, before the suit was filed, the denial of liability, on the part of the company, was based only upon the denial that Craten was permanently and totally, or permanently or totally, disabled. In the first letter, written by the adjuster, dated March 1, 1932, he merely asked for permission to obtain reports from all doctors who had been consulted by Craten. In the second letter, dated April 14, 1932, the adjuster said that the company denied liability because, from the investigation which the company had made, it appeared that the insured was not permanently or totally disabled. In the third letter, dated May 16, 1932, the adjuster said that he had again received instructions from the home office of the company, advising that the company's position had not been altered, and instructing the adjuster to say that the company was not in a position to entertain the claim. In the fourth letter, dated September 18, 1933, the adjuster said that the company had declined to make any payment because Craten had not reached a stage of permanent total disability; and the adjuster ended his letter by saying: "If there has been no change in Craten's condition since our investigation and the time of the medical examination, our decision is unchanged." In a letter from the home of-

fice of the company, dated September 20, 1933, and signed by the claim examiner, he said that the company had conducted a complete investigation into the claim and had found that Craten had not become totally permanently disabled during the continuance of the insurance; he said that the information contained in the company's files showed that only one of Craten's hands was injured; and he said that the insurance was canceled on February 28, 1928. It is true that all of these letters were written after the 28th day of February, 1928, the date on which—as the company contends—the insurance on Craten was canceled. But, as we have pointed out, the insurance on Craten was never canceled, because the cause of the termination of his employment was his permanent and total disability. Hence the letters were written within the time in which Craten should have given the company satisfactory evidence of his permanent and total disability; and, being written within that time, the letters constituted a waiver on the part of the insurance company of the right to complain of the want of such evidence. St. Landry Wholesale Mercantile Co. v. Teutonia Insurance Co., 113 La. 1053, 37 So. 967; J. B. Clark & Sons v. Franklin Insurance Co., 130 La. 584, 58 So. 345; Joyce on the Law of Insurance (2d Ed.) Vol. I, p. 1081, § 416, and Vol. II, pp. 1427, 1428, § 591. There is nothing opposed to these authorities in Wheeler v. London Guarantee & Accident Co., 180 La. 366, 156 So. 420, 422. On the contrary, it was said in that case:

"If an insurer denies liability under the policy on special grounds within the time given the policyholder for giving notice and making proofs of his claim, such a denial constitutes a waiver of the right to demand timely notice, because if the policyholder is informed by the insurer that it will in no event recognize his claim, there is no necessity for the giving of notice or the making of proofs. But if the insured fails to give notice of the accident within the time stipulated in the policy and for that reason loses his right to recover thereunder, there is no reason why he should be permitted to recover upon the ground that the insurer, after the insured's rights are lost, declines for that and additional reasons to recognize the validity of plaintiff's claim."

Adverting now to the extent of Craten's disability, both of the surgeons who examined him and testified in the case, the one who treated him for nearly four years and who testified as a witness for the insurance company, as well as the one who examined Craten at the instance of his attorney, and who testified as a witness for Craten, both of these surgeons being of very high standing in New Orleans, testified, substantially, that, on account of Craten's lack of education and low order of mentality, the permanent loss of the use of his left hand so disabled him that he would never be able to engage in any occupation for wage or profit. The attorney for the insurance company, questioning the surgeon who testified as a witness for the company, asked if Craten might not engage in some employment in which he might have to use only his right hand, not his left hand; and the surgeon answered with the significant question: "For instance, what?" Of course, there are occupations or employments which a man

without the use of both hands, and without any education or much intellectual equipment, is able to engage in for wage or profit; but such occupations or employments are not available to many men who are so afflicted. The testimony here shows that the only tools or implements that Craten ever worked with were wheelbarrows and picks and shovels. It is not disputed that the only occupations or employments that Craten ever engaged in for wage or profit—and the only occupations or employments that he was ever able to engage in for wage or profit—were those requiring physical strength, and the use of both hands. In the case of Marshall v. Metropolitan Life Insurance Co., 164 So. 441, 444, which was a suit for a permanent and total disability benefit, under a group policy similar to the one on which this suit is founded, it was held by the Court of Appeal for the parish of Orleans, and the ruling was affirmed by this court by the refusal to grant a writ of review, on the ground that the judgment of the Court of Appeal was correct, that an injury to an unskilled laborer "rendering his left leg practically useless" was a total disability, within the meaning of the policy. Several decisions were cited maintaining that a physical injury or disability that might not render an educated or a professional man, or an artisan, unable to engage in any occupation or employment for wage or profit, might so affect an illiterate and unskilled laborer, within the meaning of an insurance policy providing for a total disability benefit.

■ The stipulation in the policy that the entire and irrecoverable loss of the use of both hands, or of both feet, or of one hand and one foot, shall be deemed to be total and permanent disability, does not preclude the idea that the entire and irrecoverable loss of the use of only one hand or one foot might be, to an uneducated and unskilled laborer, total and permanent disability. The mentioning, in the policy, of the loss of the sight of both eyes, or loss of the use of both hands or both feet, or of one hand and one foot, is done merely by way of illustration, and to make it plain that the insurance company will not dispute that any one of these specified afflictions is total disability. The Civil Code, in article 1962, declares that, in a contract containing general obligations, if the parties, in order to avoid a doubt whether a particular case will come within the scope of the agreement, make a special provision for such a case, the general terms of the contract will not be restricted thereby to the particular case that is provided for. If the wording of the contract of insurance leaves any doubt about this, article 1958 of the Civil Code is applicable. It provides that, if a doubt or obscurity as to the meaning of a contract has arisen from the want of some necessary explanation which one of the parties ought to have given, the construction favorable to the other party shall be adopted, whether he be obligor or obligee.

■■ Our conclusion is that the insurance company is liable for the $1,000 for which Craten was insured, but not for the penalties prescribed by Act No. 310 of 1910, p. 527. According to the terms of the statute, the penalties are incurred only when the insurance company delays payment to

the insured for a longer period than thirty days after due notice and proof of disability, "without just and reasonable grounds such as to put a reasonable and prudent business man on his guard." Section 2. In the case of Marshall v. Metropolitan Life Insurance Co., supra, the court said: "It is strenuously contended that the penalties of Act No. 310 of 1910 should be imposed." But the court refused to impose the penalties, saying that there was sufficient substance to the defense to make it a just ground for defending the suit. The only defense urged in that case was the contention that the injury which rendered Marshall's left leg "practically useless" did not produce total disability. Strange to say, the accident to Marshall happened in 1928, and the case was not heard in the civil district court until some time after 1934. The same surgeon who treated Emile Craten, for the insurance company carrying the employers' liability insurance, testified in Marshall v. Metropolitan Life Insurance Co., and described "his injuries, as they appeared on December 31, 1934, six years after the accident." We mention this merely to show that there was approximately the same delay, and that the refusal of the company to pay the claim was on the same ground, in Marshall's Case as in this case. If the ground on which the Metropolitan Life Insurance Company denied liability in Marshall's Case was a just and reasonable ground, so was the ground on which the Ætna Life Insurance Company denied liability in this case. Craten's suit was filed two years before the court of appeal decided the case of Marshall v. Metropolitan Life Insurance Co. The judgment in Craten's case was rendered by the judge of the civil district court four days before the Supreme Court refused to grant a writ of review in the case of Marshall v. Metropolitan Life Insurance Co. There was nothing that the Ætna Life Insurance Company could do then to avoid the penalties which Craten was demanding, and which the civil district court had imposed, except to appeal from the decision. If the decision in the Marshall Case, holding that the loss of the use of one leg was, to an illiterate and unskilled laborer, total disability, had become final before the insurance company in this case denied liability, the question of liability for the penalties prescribed by the statute would be different. In every case the question of liability for the penalties depends upon the facts and circumstances of the particular case.

Our conclusion that the appellant is entitled to a reduction of the amount of the judgment disposes of the appellee's prayer for damages for a frivolous appeal.

We have concluded, in the exercise of the discretion vested in the court by section 2 of Act No. 229 of 1910, to tax the appellant for all court costs.

The judgment appealed from is amended by reducing the principal sum from $2,300 to $1,000, and, as thus amended, the judgment is affirmed. The defendant is to pay all costs.