181 So. 871

## MADISON v. PRUDENTIAL INS. CO. OF AMERICA.

### No. 34438.

Nov. 29, 1937.

On Rehearing May 2, 1938.

Rehearing Denied May 30, 1938.

Melvin F. Johnson, of Shreveport, for appellant.

Madison, Madison & Fuller, of Monroe, for appellee.

FOURNET, Justice.

This is a suit to recover certain disability benefits under a life insurance policy, on the ground of total and permanent disability of the insured, and also penalties and attorney's fees under the provisions of Act No. 310 of 1910. The defense is that the disability is neither total nor permanent. The trial judge rendered judgment in favor of the plaintiff and against the defendant, as prayed for, and the defendant has appealed.

A mere reading of the plaintiff's petition shows that the amount in controversy is less than $2000.00, and this Court has repeatedly held that it will, of its own motion, dismiss an appeal where the amount involved is not sufficient to give it jurisdiction.

The plaintiff filed this suit on October 3, 1936, to recover the sum of $50.00 per month, beginning November 15, 1935, with a like amount as statutory penalties, $300.00 as attorney's fees, and also the sum of $89.40 which he had paid the defendant for a quarterly premium that became due during his alleged total and permanent disability. Under plaintiff's own allegations he could recover only such amounts as were past due under the policy of insurance (Earl L. Wiener et al. v. Crystal Oil Refining Corporation, 183 La. 879, 165 So. 131), and a like amount as penalties, plus $300.00 as attorney's fees, and $89.40 for premiums paid during disability. These items, by simple calculation, amount to $1389.40.

The amount involved in this case being less than $2000.00, this Court is without jurisdiction. Constitution of 1921, Art. 7, Sec. 10. Appellate jurisdiction in such cases is vested, under Sections 29 and 20 of Article 7 of the Constitution of 1921, in the Court of Appeal, Second Circuit. However, under the provisions of Act No. 19 of 1912, this Court is authorized to transfer the case to the proper court instead of dismissing the appeal.

For the reasons assigned, it is ordered that this appeal be and is hereby transferred to the Court of Appeal, Second Circuit; the transfer to be made within sixty days after this judgment becomes final, and, if not so made, then the appeal shall be deemed dismissed; defendant and appellant to pay the costs of appeal in this court, and the remaining costs to await final determination of the matter.

HIGGINS, J., absent.

On Rehearing.

ROGERS, Justice.

This is the second time this case has been argued and submitted to this court. On the previous hearing, the court, believing that the amount involved was insufficient to vest it with jurisdiction, ex proprio motu transferred the case to the Court of Appeal for the second Circuit. On plaintiff's application, a rehearing was granted and the case has been again argued and submitted for decision.

On a re-examination of the record, we find that this court has jurisdiction of the case, and, consequently, we erred in transferring it to the Court of Appeal. The prayer of the petition discloses that plaintiff asked for judgment for $50. a month as disability payments and an additional $50. a month as penalties, under Act No. 310 of 1910. At the time the petition was filed, there were eleven monthly payments due and six monthly payments with alleged monthly penalties became due between the filing of the suit and the rendition of the judgment, all at the rate of $100. a month, making a total due on these items of plaintiff's demand of $1700. The prayer of the petition also asks for $300. as attorney's fees and for the return of $89.40, erroneously paid for quarterly premiums which became due during disability, making a total of $2089.40, which plaintiff claimed to be the amount due at the date of the judgment. The judgment itself was in plaintiff's favor for $850. for past due disability payments and $850. as statutory penalties, together with $300. as attorney's fees and $89.40 for return of premiums erroneously paid, making a total of $2089.-40, exclusive of interest and costs. The judgment also ordered that monthly payments of $100. each be made plaintiff during the continuance of his disability.

The suit is founded on the supplementary provisions of a life insurance policy providing for total and permanent disability benefits. Its object is to recover the disability benefits provided by the policy, statutory penalties and attorney's fees. Defendant excepted to the petition on the ground that it did not set forth any right or cause of action. This exception was overruled. If the ruling be correct, then the question to be decided is whether under the facts disclosed by the record plaintiff is entitled to recover the benefits, penalties and attorney's fees claimed by him.

The life insurance policy sued on is dated January 29, 1926. At that time, plaintiff was twenty-five years of age and, as shown by his application and the medical examination, was in excellent health.

Plaintiff was admitted to the bar of this state in the year 1925, and at the time of the issuance of the policy was practicing his profession as a member of the firm of Madison, Madison & Fuller, in the town of Bastrop. His work for the firm, in addition to the general practice of law, was chiefly that of trial lawyer, particularly in suits growing out of damage and compensation claims.

In addition to plaintiff, seven lay witnesses and four physicians testified in plaintiff's behalf. Four physicians testified on behalf of defendant. From an examination of their testimony we have reached the conclusion that plaintiff has established a case of total permanent disability within the terms of the insurance contract. Narratively stated, the facts as we find them from an analysis of the testimony are as follows, viz:

Plaintiff's disability out of which this suit arose began in the early part of October, 1935, with the appearance of a small sore on his left leg between the knee and ankle. At that time plaintiff consulted Dr. W. V.

Garnier, his local physician, who after it had failed to respond to the usual treatment, diagnosed the trouble as a varicose ulcer caused by a varicose vein. In accordance with accepted medical practice, plaintiff was given an injection of a solution of quinine hydroclore urithane. Shortly thereafter a small sore appeared at the point of injection and plaintiff suffered considerable pain. The sore was treated medically. On October 31, 1935, plaintiff attended a dance, but was unable to dance because of the pain in his leg and foot. Plaintiff's condition continued to grow worse, and about November 15, 1935, plaintiff turned his ankle while crossing a street in New Orleans, causing him severe pain and aggravating the condition. About November 26, 1935, plaintiff found it necessary to enter the Morehouse Hospital in Bastrop, where he remained until December 9, 1935, when he attempted to resume his work as a practicing lawyer. His condition continuing to grow worse, plaintiff re-entered the hospital on December 18, 1935. The pain in his leg persisted and several ulcers appeared. Plaintiff was confined to the hospital until January 10, 1936. Early in February, 1936, he went to Mineral Wells, Texas, and was under the care of a physician there for two or three weeks. He returned to Bastrop for a short period, during which, in the absence of Dr. Garnier, he was treated by Dr. Poimbouef, an associate of Dr. Garnier. Plaintiff went back to Mineral Wells in March, 1936, and remained there until the month of April. His health failed to improve and he returned to Bastrop and again entered the Morehouse Hospital in May, 1936. He developed an eczematous rash over his entire body and an ulcer, which became infected, on his right leg. He also developed a swelling on his right thigh, which was opened and found to contain pus. Later the swelling was reopened.

During this entire period, plaintiff suffered considerable pain and was able to attend only to a very small part of his professional work, even during the time he was not confined in the hosptial.

On the advice of his local physicians, plaintiff entered the Missouri Pacific Hospital at St. Louis, Missouri. He remained in this hospital from June 4, 1936, until about August 15, 1936, under continuous treatment during the course of which his right leg was operated on to remove the pus. On his return to Bastrop he continued under the care of his local physicians following the course of treatment prescribed by the physicians in St. Louis.

Due to his lengthy illness, the constant pain he suffered and the absorption of poisons, plaintiff's nervous system became seriously affected and he became morose and irritable. His condition at the time of the trial was ascribed to the damage caused to his nervous system in addition to the trouble with his legs and ankle. His affliction was described by physicians who testified in the case as toxic neurosis or toxic psychosis or a toxic dermatitis, of a neuro toxic origin.

Plaintiff attempted to practice his profession in August, 1936, after he returned from St. Louis, but was unable to do so effectively. He was under the continuous

care of local physicians and made several trips to St. Louis for further treatment. On the advice of his physicians, plaintiff handled only such minor matters connected with his law practice as did not require any mental effort on his part. He retired early, slept late and did not maintain any regular office hours. Plaintiff's physicians were of the opinion that any attempt on his part to do the full work required of him as a practicing lawyer would only aggravate his condition and cause it to grow worse, unless he was able to rehabilitate himself under medical treatment and observation.

On the trial of the case, physicians testified that such treatment and observation would require a long period of time, and, adopting the most favorable view, that it would take from eighteen months to two years to determine whether plaintiff would recover, and that even after that time plaintiff's condition would be such as to require a long course of treatment. Most of the physicians gave their opinion that the damage to plaintiff's nervous system was permanent and that he would never regain his health.

During the month of May, 1936, plaintiff notified the defendant of his disability and made proof of his demand for the payment of disability benefits on the blanks furnished by the company. Plaintiff also submitted to the defendant the reports of three physicians, showing the state of his health.

Defendant, however, believing that the proofs furnished were not sufficient to establish that plaintiff was disabled both totally and permanently, refused to allow plaintiff's claim for disability benefits under the terms of the policy. Following this refusal, plaintiff filed the present suit.

The policy sued on provides as follows:

"If the insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime * * * the Company, upon receipt of due proof of such disability, will grant the following benefits. * * *"

There is no presumptive clause in the policy. Defendant argues that the words "total and permanent" cannot be construed to mean "a total temporary disability" or a "partial permanent disability." That the policy refers to the inability to perform any work for any kind of compensation or engage in any occupation. And that under the terms of the policy the disability must be both total and permanent before liability exists.

Defendant's argument is predicated on its contention that the testimony in the record fails to show that plaintiff's condition is total and permanent. That the testimony preponderately points to a mere restriction of plaintiff's activities. And that all defendant's friends and medical advisers expect his full recovery.

■ Our appreciation of the weight of the testimony, which we have hereinabove

set forth, is not in accord with defendant's contention. The fact that plaintiff may be able to do some "light" work as a lawyer is not sufficient to hold that his disability is not total. If a lawyer cannot do more than "light" work, it does not require any great amount of reasoning to force the conclusion that he is not in condition to bear the burdens and responsibilities of even a moderately successful lawyer. A lawyer who is able to do only "light" work will soon find himself without even "light" work to do.

While plaintiff is not absolutely helpless, he is not able to perform the substantial and material work required of him by his profession.

As to whether plaintiff's disabilities are permanent, even defendant's witnesses state that it will require time to determine that fact. The record shows, however, that plaintiff's disability has already existed beyond any temporary period.

It is well settled law that provisions in life insurance policies for indemnity in case insured becomes "totally and permanently disabled" do not require that he should be rendered absolutely helpless, but merely requires such disabilities as render him unable to perform the substantial and material acts of his business or occupation in substantially his usual and customary way. Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52; Boughton v. Mutual Life Insurance Company, 183 La. 908, 165 So. 140.

It is also well settled law that the term "permanent" when used in a life insurance policy providing for disability benefits where the insurer becomes "totally and permanently" disabled is construed to be used for the purpose only of excluding disabilities which are merely temporary. Although the disability be one which may or will pass away in a period of time, yet if the required period is longer than that which, reasonably considered, is only temporary, then it must of necessity fall within the opposite general term "permanent", because it not temporary. Equitable Life Assurance Society v. Serio, 155 Miss. 515, 124 So. 485; Bahneman v. Prudential Insurance Company of America, 193 Minn. 26, 257 N.W. 514, 97 A.L.R. 121; Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52; Frey v. Manhattan Life Insurance Company, 182 La. 821, 162 So. 633.

The case of Equitable Life Assurance Society v. Serio, cited with approval by this court in the case of Crowe v. Equitable Life Assurance Society, contains a full discussion of the term "total and permanent" disability, and we quote from that case as follows (page 486):

"If the term 'total disability' should be held to mean utter helplessness, and 'permanent disability' be held to mean utter hopelessness, then about the only case covered would be where the insured has lost both arms and both legs or some other such a case so rare as not to be for a moment reasonably considered as ever having been within the contemplation of the insured at the time of the taking of the policy. It would come to this: To give said terms the strict or literal interpreta-

tion stated would be to convict a reputable insurance company of having put out among our people, and having collected from them premiums on, a policy provision which in effect would be scarcely more than a cheat, a pretense, and a fraud. Certainly no such could have been intended.

"We construe the term permanent, when used in a policy provision such as this, as one used for the proper purpose, and for the purpose only, of excluding disabilities which are merely temporary. Although the disability be one which may or will pass away in a fair period of time, yet if the required period is longer than that which, reasonably considered, is only temporary, then it must of necessity fall within the opposite general term permanent, because it is not temporary. There are many cases and situations in the law, and these outside of insurance problems, where the word 'permanent' is used and interpreted in a time sense far shorter than perpetual or lasting always. The connection in which the word is used, rather than its most restricted literal definition, is required to control."

In Frey v. Manhattan Life Insurance Company, where the testimony did not conclusively show that the plaintiff's disabled condition was permanent, that is, would continue for the rest of his life, this court well said (page 635):

"Whether disability brought on by bodily disease is permanent or temporary is necessarily a matter of opinion. The best medical experts are sometimes convinced from conditions found in the early stages of a disease that recovery is not likely, whereas, later on, unexpected changes develop showing that they were mistaken. It is a fact well recognized that total or partial recovery does in some cases occur when at first the disease seemed to be fatal. In cases of disease, future developments may show that seemingly permanent disability resulting from it may in fact be only temporary and vice versa.

"Where, under a policy which contains provisions for disability benefits like those quoted above, the policy holder makes proof that he is, and has been for a long period of time, totally disabled from bodily disease, the insurer must accept the apparent proofs of the permanency of the disease and make payments accordingly. It must give to the insured the benefit of his disabled condition while it lasts, and not wait until the end of his life to find out whether disability is permanent. That would deprive the insured of the very benefits which the policy guaranties."

The same rule of law was followed in the case of Boughton v. Mutual Life Insurance Company, 183 La. 908, 165 So. 140.

In the case of Bahneman v. Prudential Insurance Company, decided December 7, 1934, the Supreme Court of Minnesota construing a policy issued by the defendant company couched in the same language as the policy sued on here, held, under the terms of the policy with respect to total and permanent disability, that the action to recover such benefit payments lies notwithstanding that, when action was

brought, the ailment causing the disability was no longer totally disabling.

It appears, from what we have said, that in legal contemplation the definition of "permanent disability" contained in the policy excludes only such disabilities as are merely temporary. If the disability be one which may or will pass away in a period of time, yet if the required period be longer than that which, reasonably considered, is only temporary, it must of necessity fall within the opposite general term "permanent", because it is not temporary.

■ This view of the term "permanent disability" as used in the policy is fortified by the clause in the policy providing that the insured may be required, periodically, to make proof of the state of his disability. The clause reads as follows:

"Proof of Continuance of Disability— Notwithstanding the acceptance by the Company of proof of total and permanent disability, the Insured, upon demand by the Company from time to time, but not oftener than once a year after such disability has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he (or she) actually continues in a state of disability defined above; * * *. In case of failure to furnish such proof, no further premiums shall be waived and no further monthly payments shall be made on account of such disability, but any insurance then remaining under the policy shall be continued in force subject to the

payment by the Insured of any premium or premiums, based on such insurance. * * *."

This clause clearly carries the implication that the insurer contemplated that disability might terminate, in which event the waiver of the payment of premiums would cease, and the insurer would be compelled to resume such payments. It was so held in the Bahneman Case hereinabove referred to.

In support of its contentions, defendant relies largely on the case of Ginell v. Prudential Ins. Co., 237 N.Y. 554, 143 N.E. 740 and the cases predicated thereon or related thereto, among which is the case of Lewis v. Metropolitan Life Insurance Co., 142 So. 262, decided by the Court of Appeal, Second Circuit, of this state.

There is a lack of harmony between the Ginell and analogous cases and the Bahneman and analogous cases. But the Bahneman Case, which was decided eleven years after the decision in the Ginell Case was rendered, is in complete harmony with the tendency of the recent cases to favor a liberal rather than a strict construction of the term "permanent" as used in an accident or disability policy. See annotations in 97 A.L.R. 126.

The strict construction of the policy urged by defendant if admitted, would deprive plaintiff of the benefits which under this disability provision the policy guarantees.

But we cannot admit defendant's construction of the policy. We think defendant must accept the apparent proofs of

permanency furnished by plaintiff and pay the agreed disability benefits accordingly. This will afford plaintiff protection during the continuance of his disabled condition, which was what he purchased and for which he paid. In other words, this construction makes effective the general insurance purpose of the contract, which would not be the case if the insured should be required to wait until the end of his life before it could be determined whether his disability is permanent.

 In addition to filing an exception of no right or cause of action, defendant, at the beginning of the trial, re-urged the exception and objected to the admission of any evidence under plaintiff's petition, on the ground that it failed to set forth any right or cause of action. Defendant's objection as well as its exception was overruled. Defendant strenuously argues that both rulings were erroneous. And defendant particularly complains that plaintiff was improperly permitted to enlarge his pleadings by introducing over its objection testimony as to his nervousness or disturbed mental condition, arising from badly damaged nerve centers.

We are not convinced that defendant was injured by the rulings of which it complains. So far as the record discloses, defendant was afforded ample opportunity to meet all the issues presented on the trial of the case. The record shows that prior to September 3, 1936, plaintiff made demand for payment, filed proofs of claim, was interviewed by defendant's investigators and examined by defendant's physicians.

Plaintiff's suit was filed on October 3, 1936. Defendant's exception of no right or cause of action was overruled on November 20, 1936. The trial of the case on its merits began on December 18, 1936, and was adjourned to and concluded on January 4, 1937, with the right reserved to defendant to take the testimony of Dr. Hargrove, of Shreveport, Louisiana, and Dr. Lembeck, of St. Louis, Missouri, of which right defendant availed itself.

The testimony of plaintiff's medical witnesses and of plaintiff himself as to his disturbed mental condition was adduced on December 18, 1936, the first day of the trial. Therefore, with this information as to plaintiff's condition in its possession, defendant was afforded a period of seventeen days in which to obtain its evidence on this issue, and was allowed twenty-one days additional to secure the testimony of two of the four physicians who testified in its behalf. And it does not appear that defendant asked for any further time to prepare its defense or to secure additional witnesses.

In these circumstances it would be useless to send the case back to the district court for the purpose of amplifying the pleadings and producing further testimony.

 In this court, defendant has filed a motion to remand the case for the purpose of taking further evidence as to the total or permanent character of plaintiff's disability, particularly concerning plaintiff's alleged unrestricted professional activities since the trial and judgment in the district court.

Plaintiff has filed an opposition to defendant's motion, in which, after answering it allegations categorically, he prays that the motion be dismissed.

In our discussion of defendant's exception to the petition and its objection to the admission of testimony under the allegations of the petition, we have shown the futility of remanding the case for the purpose of adducing further testimony as to the nature and character of plaintiff's disability.

So far as concerns the allegations of plaintiff's resumption of the active practice of law since the trial and judgment in the district court, defendant is not remediless. The insurance contract expressly provides for examinations of the insured at stated intervals to determine if disability continues to be permanent. If defendant has reason to believe that plaintiff has recovered his health, its remedy, as provided in the contract, is to require him to furnish proof that he actually continues in a state of permanent disability.

We find no merit in the motion to remand and it is denied.

The remaining question to be determined is the question of the penalties claimed and allowed under the provisions of Act No. 310 of 1910.

Under Section 2 of the statute, the penalties provided are incurred when the insurance company delays payment for a longer period than thirty days after due notice and proof of disability, "without just and reasonable grounds such as to

put a reasonable and prudent business man on his guard."

Plaintiff insists that he is entitled to the recovery of the statutory penalties, because the defendant had in its possession the proofs furnished by him, the certificates of his doctors and a report from a physician employed by defendant showing that in the opinion of the physicians plaintiff was totally and permanently disabled.

We are not satisfied from our examination of the record, that such is the case. At the time plaintiff's demand for payment was made and the physicians' reports were submitted to the defendant, plaintiff was complaining only of ulcers and a general rash on his body. The letter of September 8, 1936, from plaintiff's attorneys to the defendant, supplementing the information furnished in the disability blanks returned to the defendant, shows that plaintiff's recovery was expected, and that his law firm was "anxious to have him return to his full duties as soon as possible."

Shortly after the suit was filed, defendant employed a physician who examined plaintiff and reported against total and permanent disability. This physician testified to the same effect on the trial of the case.

Furthermore, the record discloses that plaintiff carried two policies with the defendant company. One of these policies contained the presumptive clause, and the benefits provided by that policy were promptly allowed plaintiff.

The policy under review, however, contains a different type of clause and requires

that proof be presented the company indicating the insured to be actually and permanently disabled. No provision is made in the policy for a disability of a total temporary or permanent partial nature, nor under the policy is the disability presumed to be permanent after it has existed for any specified period of time.

Believing that the evidence received during its consideration of the claim did not definitely show that plaintiff was disabled both totally and permanently as called for by the policy, and that the indications were that plaintiff's recovery was expected and that he would return to work, defendant, without actually refusing to pay plaintiff under the policy, asked for a postponement of six months (after October 1, 1936, the date of defendant's letter to plaintiff), to the end that if at the expiration of that period, defendant "felt that plaintiff was disabled as called for by the policy," and upon receipt of medical evidence to that effect, defendant would reconsider the matter.

While we do not think that it was incumbent upon plaintiff to consent to the postponement of the payment of his claim under the policy, as suggested by defendant, we are not prepared to say that defendant, under its interpretation of the policy provisions, was not in good faith in asking for further time to consider plaintiff's claim.

■ It is settled that penalties in civil actions are not favored by the courts and should not be imposed except in cases which are clear and free from any doubt. Craten v. Aetna Life Ins. Co., 186 La. 757, 173 So. 306; Kiblinger v. American National Ins. Co., 171 La. 560, 131 So. 671; Massachusetts Protective Ass'n v. Ferguson, 168 La. 271, 121 So. 863.

In view of the facts disclosed by the record and the lack of harmony in the decisions of the courts as to what may or may not constitute total permanent disability under accident or disability policies, we think that there was a just and reasonable ground for defendant to resist plaintiff's suit, and that plaintiff is not entitled to the recovery of the statutory penalties.

■ We have concluded in the exercise of the discretion vested in the court by Section 2 of Act No. 229 of 1910, to tax defendant for all court costs. Craten v. Aetna Life Ins. Co., 186 La. 757, 173 So. 306.

For the reasons assigned, the judgment appealed from is amended by striking therefrom the award of $850. and $50. per month additional on the 15th day of each month beginning with May 1937, until payment of the amount of the judgment as penalties; and by striking therefrom the award of $300. as attorney's fees. As thus amended, the judgment is affirmed. Defendant is to pay all costs.

O'NIELL, C. J., does not take part.