## DOSSEY v. LIFE & CASUALTY INS. CO. OF TENNESSEE.

### No. 5490.

Court of Appeal of Louisiana. Second Circuit.

Dec. 3, 1937.

C. Elliott Thompson, of Monroe, for appellant.

Brunswig Sholars and James H. Dormon, both of Monroe, for appellee.

HAMITER, Judge.

A life, health, and accident policy was issued by the defendant company on March 23, 1925, in which the plaintiff herein was named as the insured. For a period of more than eleven years all stipulated and required premiums thereunder were paid.

The insured became ill on May 1, 1936, while the policy was in full force and ef-. fect, and notice of such illness was given to defendant. Thereupon two weekly disability payments, under the provisions of the contract, were made. The insurer refused to make further payments, and on May 25, 1936, a letter was delivered to plaintiff notifying her that the policy had been canceled.

Subsequently this suit was instituted, in which the insured seeks judgment for disability payments of $5 per week for a period of 24 weeks, beginning May 14, 1936, plus the penalties and attorney's fees provided for in Act No. 310 of 1910. Her petition alleges the existence of the policy contract, the payment of all premiums thereunder, the illness above mentioned, and resultant disability, and other facts not necessary to here set forth.

Defendant first filed an exception to the jurisdiction of the court ratione materiæ. This was later abandoned.

It then tendered exceptions of vagueness and no cause and no right of action. These were overruled.

The answer admitted issuance of the policy and payment of all premiums thereunder, and that defendant paid unto plaintiff two weekly sick benefits. The other material allegations of the petition were denied. Judgment was rendered in plaintiff's favor for, "Twenty-four weeks disability at $5.00 per week amounting to $120.00, plus an additional amount of $120.00 as penalty and plus an additional amount of $60.00 as attorney's fees, making a total of recovery of $300.00, plus 5% interest thereon from judicial demand until paid and all costs of court."

Defendant appealed.

In this court, defendant has filed exceptions of no cause and no right of action and a plea of unconstitutionality. Under these it urges the unconstitutionality of Act No. 310 of 1910 on the grounds that, first, the title to said act is not indicative of its contents; second, that the object of the act is not properly expressed in its title; and, third, that said act deprives defendant of its property without due process of law.

We first address ourselves to the exceptions of vagueness and no cause and no right of action filed in the trial court, and which are reurged here. These are founded on the theory that the petition does not sufficiently set forth the nature of the insured's illness or how said illness served to disable plaintiff to perform her work. In this connection, the petition recites: "Petitioner avers that, on May 1, 1936, she became ill and that, as a result of this illness, disabled, and that said illness and the resultant disability therefrom has continued from May 1, 1936, to the present date, and petitioner believes and, so believing, avers that the illness from which she suffers and which renders her disabled is a continuing one and will remain and disable her for an indefinite period in the future."

Judging the allegations just quoted in the light of good pleading, it might be said that they do not rank with the best. Certainly, improvement thereon was possible. But, when it is considered that this controversy is now on appeal, after the overruling of the above exceptions by the city judge and a trial of the merits was had in which all phases of insured's illness were probed and considered, without objection from the insurer, we are not disposed to sustain such exceptions and dismiss the suit. The law does not favor technicalities. To render judgment on these preliminary motions, as defense counsel would have us do, in view of the evidence in the record and the fact that the trial court's action was not prejudicial, our decision would be founded on a mere technicality. We are convinced that plaintiff could and would have amended her petition and furnished the desired information, if such requirement had been made of her. An exception similar to the ones here considered was involved in the case of Whitworth v. South Arkansas Lumber Company, Ltd., 121 La. 894, 46 So. 912, 913. In refusing to dismiss the suit the Supreme Court said:

"Furthermore, the cause is now before us on appeal. All of the facts are before us, and from them we glean that the plaintiff has not been advantaged in any way by the court's order overruling defendant's exception. That which may have been sufficient ground originally to dismiss the suit may not be sufficient ground after the case has been heard.

"If the suit had been dismissed because the plaintiff had refused to amend, it, perhaps, would not afford a ground for complaint; but where, on the contrary, the exception has been overruled, and the whole case as presented on the merits does not show that the action of the district court was prejudicial, we do not think that we should now dismiss the suit on the ground urged in the exception."

Prefacing our discussion of the merits of the case, we quote the following provisions of the policy to which reference will hereinafter be made:

"(a) The company will have no right to cancel the life insurance granted herein so long as the terms and conditions of this policy are complied with. However, either the insured or the company will have the right to cancel or reduce the insurance granted herein against disability from sickness or accident, in which event that part of the premium payable for such disability insurance will be discontinued or proportionately reduced. Such cancellation or reduction of insurance shall be effected by notice mailed to the Home Office of the company or to the insured's last address as shown by the company's records, with cash or the company's check for the unearned premium. Should a claim have been filed at time of such notice for an existing disability, such cancellation will take effect on recovery from such disability, or if such disability continue for as long as twenty-six weeks, the cancellation will take effect at the end of that twenty-six weeks period.

"(b) Benefits for sickness will be paid only when the insured has been confined strictly to her bed for four consecutive days. Accident benefits will be paid only when the injury is of such nature as to totally disable the insured from work of any kind for four consecutive days, 'and there must be external evidence of such injury. After the first four days, benefits will be paid for each day that the insured suffered such disability from sickness or accident, but the total number of days for which benefits will be paid under this policy is limited to 182 during any twelve consecutive months. Benefits under this clause will be paid at the end of each seven days of such disability, except when the payment is for less than seven days, in which case payment will be made at the rate of one-seventh of the weekly benefits for each day for which payment is made.

"(c) The insured shall not be entitled to any benefits for sickness or accident under this policy, unless she shall first furnish this company, or its authorized agent, on one of its prescribed blanks, a certificate by a regularly licensed and practicing physician (who shall be acceptable to the Company), giving specifically the name and nature of the disease or accident; and if the sickness or accidental disability shall continue for more than one week, a like certificate must be furnished at the beginning of each succeeding week of sickness or accidental disability. No liability for sickness or accidental disability shall begin to accrue under this policy for any week until such a certificate is received as above set forth, provided, however, that certificates received within two days following the visit of the physician will be dated for payment to correspond with such visit. The company will not accept as proof of sickness the certificate of a physician who has not actually attended the insured at her bedside, and there must be an actual attendance for each certificate filed. The company shall have the right at any time to have the physical condition of the insured examined by a physician of its own selection. If any state has any law in conflict with any provision of this section, that law shall prevail."

Our finding of fact corresponds with that of the city judge, which is disclosed in his well-prepared, written opinion in the record, and is to the effect that the policy was in full force and effect when the insured became ill on May 1, 1936. Her illness was diagnosed as a leak of the heart and anæmia. From the inception of this illness she was totally disabled and this condition still existed on the date of trial, a period of more than 10 months and in excess of the maximum indemnity duration contracted under the policy. From May 1, 1936, until May 14, 1936, she was treated by her attending physician at her home, and during this time she received the two above-mentioned weekly payments on the filing by her of claims on the forms furnished and required by the defendant company. Additional claim blanks for filing and further sick benefits were refused her. Being without funds and unable to work, she was thereafter compelled to journey to the office of her physician once or twice each week, where she was treated as a charity patient. These trips were made notwithstanding the fact that her condition demanded her presence in bed.

One of defendant's contentions here is that the policy was canceled and was nonexistent at the time suit was filed. This contention is without merit. A claim had been filed regarding the existing disability at the time of defendant's notice of cancellation, and that condition existed for more than twenty-six weeks. Under these circumstances and the plain provisions of the contract designated above as clause (a), the cancellation did not become effec-

tive until the expiration of the 26 week period.

Defense counsel argues that there is no proof in the record that plaintiff was ever confined to her bed, in accordance with policy requirements. Our construction of the applicable provision, which is above quoted as clause (b), is that the insured is entitled to sick benefits when she has been confined strictly to her bed for 4 consecutive days. After that period she is entitled to further payments as long as she experiences total disability from said illness, not, however, beyond 182 days, during any 12 consecutive months. The proof in the record convinces us that plaintiff was confined to her bed for at least 4 consecutive days and was thereafter totally disabled, and contemplated and required by the policy. On this point, the city judge found: "Proper proof of four days' bed confinement was made, Dr. Johnson making two or three trips to her bedside at the beginning of her illness."

It is urged that plaintiff did not file the proofs of claims required by the policy. According to the contract, claims could be filed only on the blanks prescribed and issued by the defendant company. These blanks, as the evidence discloses, were refused to both plaintiff and her attorney, notwithstanding proper requests therefor were made. Justification for this refusal is asserted, the basis of it being that plaintiff's physician did not attend her at the bedside after May 13, 1936, and under a provision of the policy, above quoted, as clause (c), blanks executed by a physician would only be accepted as proof of claims when attendance of that kind occurred. This, in our opinion, is unavailing. If defendant had not denied liability under the policy, had furnished the necessary blanks, and had continued the weekly benefit payments, as it should have done, the physician could and would have treated plaintiff at her bedside in accordance with the demands of her condition. However, she had no funds, and the physician could not make these bedside trips unless compensated therefor. It was through his generosity and desire to alleviate human suffering that he consented to treat her at his office as a charity patient.

We are requested to find as a fact that the insured was not disabled. This we cannot do. The undisputed testimony of both plaintiff and her physician conclusively shows that her condition was most serious, and that she was totally incapacitated from doing any kind or character of work. On this question, the trial judge states: "That the plaintiff is a sick woman there can be no doubt for her appearance at the trial hereof was plainly that of a very sick woman. It was necessary for her to have assistance in getting up and down from the witness chair, and her appearance and demeanor generally were that of a person afflicted with a serious ailment. Further proof of plaintiff's present condition is the fact that defendant had her examined by Dr. Hunter, a local physician of recognized ability in the profession, and defendant failed to offer Dr. Hunter as a witness. Therefore, it can only be assumed that Dr. Hunter's testimony would be unfavorable to defendant's cause. Dr. Johnson testified that plaintiff is sufficiently ill to be confined to her bed at all times, it being explained that she is brought to the doctor's office each week because the doctor considers her a charity patient and could not give her attention at the bedside."

In our opinion, the penalties and attorney's fees provided for by Act No. 310 of 1910 were properly allowed in this case. There was no just and reasonable ground for defendant's nonpayment of plaintiff's claim, after receiving the required notice of her illness.

The constitutionality of the last-mentioned statute is challenged by defense counsel under the exception and plea filed in this court and above mentioned. The unconstitutionality of the act was not urged in the trial court and we cannot now consider it. Succession of Fachan, 179 La. 333, 154 So. 15.

The judgment appears correct in all respects and it is affirmed, with costs.