## TRAYLOR v. LIBERTY INDUSTRIAL LIFE INS. CO., Inc.

### No. 1916.

Court of Appeal of Louisiana. First Circuit.

Jan. 11, 1939.

Lawrence Simon, of New Iberia, for appellant.

Chas. J. Mundy, of New Orleans, for appellee.

DORE, Judge.

Plaintiff sues to recover for sick benefits under two policies issued by defendant providing for total payments of $5 per week during the period that the insured is confined to bed and is under the treatment of a licensed physician. The plaintiff claims that she was confined to her bed on account of sickness from June 12, 1937, to September 13, 1937, a period of more than thirteen weeks; that the defendant has paid for only two weeks and failed and refused to pay the third claim sent to it and refused to furnish her with claim blanks on which to make proof of her illness.

Plaintiff asks for payment for eleven weeks at $5 per week, with double indemnity and attorneys fees of $25, under the provisions of Act No. 310 of 1910, or the total sum of $135. She further asks for the double weekly indemnity from September 11, 1937, to the date of filing the suit in February, 1938, and for said weekly double indemnity payment from the time of filing the suit until the payments are made.

The defendant admits issuing the policies and also admits two payments for two weeks' sickness; it also admits refusal to pay the third week's claim, but avers that its refusal to pay it was based on good and legal grounds. The defendant states that plaintiff sent in a claim blank on July 30, 1937, which was paid, and that therefore three payments were actually made instead of two as alleged by plaintiff; that no complaint was ever made by plaintiff for the rejection of her third claim, and for that reason she is estopped from claiming the penalties under Act No. 310 of 1910; and, in the alternative, if it should be held that plaintiff is entitled to payment for the week covered by the rejected claim, that the amount of the payment should be only one-half under the terms of the policies where the insured is only confined to the house and not to bed, as defendant contends is shown by the evidence.

Judgment was rendered for plaintiff for ten weeks at $5 per week plus a like amount as a penalty and $25 for attorney's fees. The defendant has appealed, and the plaintiff has answered the appeal asking that the judgment be amended allowing her $10 per week for eleven weeks instead of ten weeks during the period of her illness, and an additional $10 per week from September 13, 1937, until she is paid, and for the statutory penalty of ten per centum of the amount due her for a frivolous appeal.

The lower court found that the plaintiff had satisfactorily proved that she was confined to bed due to sickness from June 12, 1937, until about September 13, 1937, a period of thirteen weeks. She testified to that fact, and the doctor who attended her testified that he treated her until she went to the hospital for an operation and that he dressed her wounds for two or three weeks after she left the hospital. She was in the hospital during the latter half of August and left there the last of that month. She furnished the first claim proof on the regular blank of the company which is dated June 12, 1937, to cover the ensuing week. This claim was paid, and another claim was submitted, dated June 19, 1937, which was also paid. This paid the benefits up to June 27th.

Another proof blank, dated July 14th, was sent in and this claim was rejected because it was not filled out with ink as required. Another reason assigned by the defendant for refusing to pay this third claim was because the local agent found that plaintiff was not confined to her bed as he saw her out on her porch. The first two claim blanks were made out with pencil, and they were paid without any objection on that score. The doctor stated in the proof blank that plaintiff would be confined to her bed during the seven days covered by the claim, and he testified that if she was not in bed during that period she should have been. Under this situation, there was no valid reason for rejecting this claim.

Plaintiff testified that she could not get any blanks from the local agent, and that she had to borrow a blank from a neighbor on which to make her third claim. On July 30th, plaintiff wrote the defendant a letter stating that she had been sick since

June 12th, and could not get any blanks from the local agent. She threatened to sue the company if her claim was not paid in a few days, and she requested the company to send her some blanks. With this letter she sent another proof blank filled out by her doctor and dated the same as the letter. In this proof the doctor gives his last treatment of plaintiff from June 12th to July 14th; all tending to show that blank No. 3 and blank No. 4 was one and the same as concluded by the trial judge.

■ The company sent the money to pay this claim to its local agent, and the latter testified that he gave the money to Irving Sherman, a cousin of plaintiff who was staying in her house; that he gave the money to Sherman on the outside and asked him to take the claim in and have it receipted by Mary who was sick. Sherman admits receiving five dollars in quarters and halves from the agent at one time, but does not remember the date, and states that at that time the receipt was signed by plaintiff's daughter, Alberta, who was in the house with the plaintiff, Mary. Alberta admits that Sherman came in the house to have one claim receipted but denies that she signed her mother's name to this particular claim. She admits, however, signing for her mother when the first two claims were paid, and a comparison of the handwriting on this claim with that on the other two claims and the specimen of her handwriting in the record indicates that she signed this claim for her mother. We are of the opinion that the trial judge was correct in holding that the defendant had shown payment of the claim dated July 30th, but which was to pay the weekly benefit due July 14th.

■ It is shown that the payment of the claim dated July 30th was the last one made by the defendant. Her acceptance of such payment could not estop her from claiming payments due during other periods, since it is clearly shown by the evidence that the defendant was fully advised of her continued sickness since June 12th and her inability to secure the necessary blanks to make her claims for the various periods involved. It is testified and not denied that the defendant failed to reply to her letter of July 30th and failed to comply with her request for blanks.

■ The lower court correctly allowed plaintiff to recover for the unpaid ten weeks of her illness with the penalty and attorney's fees. Its unjustified refusal to pay a claim when submitted and its refusal to furnish the blanks necessary for proof of further claims justified the infliction of the double indemnity penalty. Dossey v. Life & Casualty Insurance Co., La.App., 177 So. 427. Plaintiff is entitled to recover for the ten weeks at $5.00 per week, or $50.00, as the amount due her, and in addition she is entitled to have that amount doubled plus the attorney's fees as a penalty under the provisions of Act No. 310 of 1910.

■■ There is nothing in the Act that authorizes the imposition as a penalty double indemnity weekly payments for every week that these payments are not made. The Act prohibits a company issuing a policy like those in controversy from delaying payment of the sick benefits for a period longer than thirty days after notice and proof is given the company, and where such payments are delayed for more than thirty days after notice and proof, the company is required to pay the assured, as a penalty, double the amount due under the terms of the policy; the words, "during the period of delay" manifestly having reference to the time when the penalty attaches; i. e., after the period of delay in which payment should be made has expired. While the language used in the Act is not very clear, yet it was evidently the purpose of the Legislature to permit the recovery of a penalty equal to one hundred per cent. of the amount due, plus attorney's fees, and that is the interpretation which has been placed on the Act by the courts of this State. Bain v. Life & Casualty Insurance Co., 188 La. 290, 176 So. 129; Wilkins v. Universal Life Insurance Co., La.App., 159 So. 185.

■ The plaintiff's demand for the ten per cent. statutory penalty for a frivolous appeal cannot be granted for the reason that we feel that defendant had reasonable grounds upon which to appeal.

For these reasons, the judgment appealed from is affirmed.