This suit involves alleged rights of the plaintiff under five life endowment insurance policies and under one combination life insurance, sick and accident benefit policy, all issued by the defendant at plaintiff's instance. In four of the life endowment policies, plaintiff is designated as beneficiary. One of these policies is on the life of a brother; one on the life of a sister; one on the life of a daughter, and in the other, plaintiff's mother is the insured. The fifth life endowment policy was issued to plaintiff. A sister is named beneficiary therein. The sixth policy was issued to plaintiff and her mother is named beneficiary under the life insurance feature *West Page 757 
thereof. All of said policies excepting the sixth, issued during the period between October, 1928 and November, 1938. All premiums thereon to and including September 5, 1939, were paid by plaintiff. None thereafter was paid by any one.
The sickness and accident benefit policy contains these stipulations:
"Weekly benefits for sickness will only be paid for each period of seven consecutive days that the insured is, by reason of illness, necessarily confined to bed and that he shall remain under the professional care of a duly licensed and practicing physician.
* * * * *
"The insured shall not be entitled to any benefits for sickness or accident under this Policy unless a certificate by a regularly licensed and practicing physician (satisfactory to the Company) showing the cause of the sickness or injury shall have been furnished the Company or its authorized agents within seven days from the date of physician's first visit or treatment; and benefits for sickness or accidental disability for any subsequent week shall not be claimable unless at the beginning of each subsequent week for which such benefit is claimed a similar certificate is furnished. No liability for sickness or accidental disability shall begin to accrue under this Policy for any week until such a certificate is received as above set forth."
Plaintiff was taken sick on or about August 28, 1939. She summoned Dr. Huggins, a practicing physician in the City of Shreveport, who found malaria to be the superinducing cause of her illness and prescribed for her accordingly. Plaintiff had Dr. Huggins fill out and sign a certificate in printed form, furnished by defendant, purporting to cover the facts of her case, which she mailed to defendant with request for payment of weekly sick benefits. This certificate was received by defendant in due course. However, it was found to be deficient in several respects, which plaintiff admits, and for this reason it was returned to plaintiff with the request that she have it properly filled out and returned to defendant. This was not done. She says she forgot about it. It was not introduced in evidence. No other physician attended plaintiff until Dr. Harris was called in.
On September 21st, plaintiff was visited by Dr. Harris, who diagnosed her ailment as hapatitis malaria. Her temperature was 99.2 and pulse rate 108. Dr. Harris also filled out and signed a regular printed form of certificate giving the facts of plaintiff's illness as he found them to exist. He did not state in the certificate nor did he testify that this slight temperature would necessarily confine plaintiff to bed. This certificate was also sent to defendant with request for payment of sick benefits. The request was refused on the alleged ground that plaintiff's illness did not as a fact confine her to bed. This suit followed.
Plaintiff seeks firstly to recover sick benefits for the period of her alleged illness, to-wit: Seven weeks at the rate of $5 per week, plus statutory penalty and attorney's fee of $150; and, secondly, to recover the premiums paid by her on the life endowment and life insurance policies with interest. This phase of her suit is predicated upon the fact, as alleged, that defendant breached all of said contracts by refusing to accept
from her the premiums due thereon after September 5, 1939.
Defendant denies that the life endowment and life insurance policies were breached or became ineffective because of any act or acts on its part or on the part of any of its agents or representatives; that plaintiff at no time offered to pay any of the premiums on any of said policies after September 5, 1939, though repeatedly solicited to do so, and, therefore, there was not any refusal by its agents or representatives to accept from her said premiums; that said policies simply lapsed for non-payment of the weekly premiums due thereon and as stipulated therein.
As regards the demand for sick benefits, defendant avers that plaintiff furnished it with only one physician's certificate in the form and as required by the policy as a condition precedent to her right to demand payment thereof and that payment was declined because plaintiff, for the week covered by the said certificate, was not confined to bed, such confinement, under the terms of the policy, being indispensable to the right to recover said benefits.
The trial court gave judgment for plaintiff for sick benefit for one week, or $5, plus penalty of like amount and for $50 attorney's fee. In all other respects her demand was rejected. Both parties appealed.
Plaintiff assigns as error in the judgment the rejection of her demand to any extent. Defendant argues that no judgment at all should have been rendered against it. In the alternative, it contends that the attorney's fee is excessive and *West Page 758 
that the penalty should not have been imposed.
Plaintiff and all others who testified in this case are members of the colored race. Therefore, the credibility of neither enjoys any advantage over that of the other on racial account.
Defendant's agent called at plaintiff's residence each Tuesday to collect premiums due under the policies involved herein. She made no payments otherwise. It was the rule and custom of defendant to thus collect premiums. Plaintiff testified that after September 5, 1939, no one representing defendant came to her home to collect the premiums and for this reason she paid none after that date. She says that had they come to see her as was their custom, she would have paid the premiums. She alleged, however, that defendant refused to accept her offer to pay the premiums. The sick and accident benefit policy, under its own terms, did not lapse until four weeks' premiums were in arrears. Her testimony to the effect that payments were not solicited of her by defendant's agents after September 5th is mildly corroborated by that of a colored man who leased from her a room in which he lived.
There is authority for the proposition that when the insurer's agent regularly calls upon the insured for payment of premiums, the insured is within his rights to act upon the custom thus established. He is not required to make such payments otherwise unless prior notice is given him of the intention to abandon the custom. Riley v. Life Casualty Ins. Co. of Tennessee,184 S.C. 383, 192 S.E. 394; Cooley's Briefs on Insurance, 2d Ed., Vol. 4, *page 3591. 
However in the instant case, the testimony convinces us, as it doubtless did the lower court, that plaintiff's failure to pay the premiums as they matured was not due to lack of request therefor from defendant's agents.
A negro man by the name of Hardy Walker, up to and including September 5, 1939, acted as defendant's agent in collecting the premiums from plaintiff. This was the last day he made a collection as he then left defendant's employ. On this last visit he was accompanied by J.C. Perry, defendant's assistant manager. Plaintiff then complained about not receiving payment of her claim under the certificate of Dr. Huggins. She was promised that the matter would be looked into. The result was that the certificate was returned to her as above stated. She evidently became dissatisfied because no payments were made to her and decided to cease her efforts to keep any of the policies in force. Her income while sick, so far as the record discloses, was only $1.50 per week. It is not improbable that scarcity of finances had its influence upon her decision. She was expecting the agents to bring money to her instead of collecting premiums from her.
A colored man by the name of J.L. Cockerham succeeded Hardy Walker as collector. He testified that when he entered upon his duties as collector, defendant provided him with a list of insured persons who were in arrears on premium account and that plaintiff's name was thereon; that he called at her home on September 11th and solicited payment of premiums due at that time. She refused to make any payment at all. He endeavored to impress her with the advantages to be gained by keeping the policies in force. He continued to call on plaintiff through the month of September and tried without success to induce her to make additional payments. On three of these visits Perry, the assistant manager, accompanied him. He further testified that he received a percentage of all premiums collected by him as compensation for his services, and, therefore, it was to his financial interest and advantage to collect as many premiums as possible. On each trip to see plaintiff she discussed with him her claim for sick benefits.
Perry's testimony corroborates that given by Cockerham in all essential details. He says he also endeavored to induce plaintiff to pay the premiums. He testified that on a visit to her residence very soon after Dr. Harris' certificate had gone in, he found plaintiff sitting in a rocking chair on her front porch fully attired. For this reason, her claim under Dr. Harris' certificate was rejected.
It is but reasonable to assume that an insurance company's agent, the amount of whose compensation depends upon the amount of premiums he collects, would make due effort to collect as closely as possible all premiums due by the insurer's patrons. His subsistence depends upon premium receipts as does the company's continued existence. There appears no good reason why the company would desire *West Page 759 
to see the policies lapse. On the contrary, abundant reason appears why it should wish to have them remain in force.
Plaintiff testified that she was confined to her bed by illness for the seven weeks following August 28, 1939. Her testimony in this respect is corroborated by her tenant. In view of the fact that she only once complied with the policy requirements by providing defendant with a completed physician's certificate concerning the nature of her illness, this instance only will be discussed and passed on. We refer to Dr. Harris' certificate.
The lower court evidently found that the testimony preponderates in favor of plaintiff's contention that for the week following the visit by Dr. Harris, she was "necessarily" confined to her bed because of the illness diagnosed by him. The record sustains this finding.
Because plaintiff was seen in a rocking chair on her front porch or was able to come to her bedroom door to briefly talk with defendant's agents, during the week following Dr. Harris' certificate, does not necessarily mean that she was not during that time confined to her bed within the meaning of the policy covenants. To have temporary relaxation from the monotonous occupancy of a bed for days, ofttimes a patient resorts to the comforts of the family rocker. Also, one may be confined to bed, yet able to walk about the sick room for brief intervals or answer telephone or door calls. See Newton v. National Life Insurance Co., U.S.A., 161 La. 357, 108 So. 769; Lewis v. Liberty Industrial Life Insurance Co., Inc., 185 La. 589, 170 So. 4, 107 A.L.R. 286.
Plaintiff also contends that no duty rested upon her to furnish additional certificates, in view of defendant's action on the two sent in; that to have done so would have been vain and useless. She cites the following cases as supporting her position: Johnson v. Universal Life Insurance Co., La.App., 150 So. 438; Traylor v. Liberty Industrial Life Insurance Co., Inc., La.App., 185 So. 649; Dossey v. Life Casualty Insurance Co., of Tennessee, La.App., 177 So. 427; Smith-Canclar v. Unity Industrial Life Insurance Sick Benefit Association of New Orleans, La.App., 144 So. 264.
We have read these cases closely. Neither is nearly on all-fours with that at bar. The facts of each are easily differentiated from those of this case. Here, the first certificate was not finally rejected. It should have been completed and returned to defendant. Until this was done, final action could not be had on it. Plaintiff waited three weeks after Dr. Huggins' visit before procuring the services of another physician. Presumably, such services were not needed until procured. However, for this entire time she claims benefits are due her. The policy plainly provides that each certificate is good for only the ensuing week. The certificates to some extent influence the insurer's action. To provide them is simply meeting the policy's requirements. Without a doctor there can be no certificate, and without the certificate, no valid claim for benefits.
Section 2 of Act 310 of 1910 provides that benefit payments when once due and demandable under health and accident policies shall not be delayed more than thirty days "without just and reasonable grounds such as to put a reasonable and prudent business man on his guard." Failure to make such payments without the named grounds exposes the insurer to payment of a penalty double the amount due and attorney's fees "to be determined" by the court.
We do not believe the facts of this case warranted defendant in not paying plaintiff the benefit due her under Dr. Harris' certificate. Unquestionably, she was sick to some extent for several weeks. It may be true that within the terms of the policy, she was not confined to bed for this entire period. The evidence relied upon by defendant's agents to induce them to believe she was not confined to bed, was insufficient to constitute the "just and reasonable grounds" required in the statute. They should have made further investigation into her physical condition before acting so drastically against her.
All things considered, we do not think the amount of attorney's fee excessive. The act reposes in the trial court the power to determine the quantum of fee in such cases. Of course, the legal discretion he is required to exercise in arriving at the amount of the fee must not be abused. It was not in this instance. The trial judge is in the best position to correctly fix the fee. He knows best the quality and quantity of labor put forth by counsel in the prosecution of the insured's action. *West Page 760 
Defendant's counsel argues that the fee should not exceed the amount of the judgment recovered. This position is not sound. If such a standard should be fixed, it would be impossible for claimants of small amounts in cases of this character to procure the services of counsel to enforce such claims. The insurer would be well protected against payment of small claims for lack of judicial prosecution thereof.
The judgment appealed from is correct. It is affirmed with costs.