On September 30, 1932, the defendant, a fraternal benefit society having a lodge system and transacting business without profit in the interest of its members and their beneficiaries, issued a policy of insurance to Dossie Morris, which policy named the plaintiff herein, wife of the insured, as beneficiary, and provided for the payment to her of $1,000 on the death of her husband, and also contained a rider to the effect that upon his death the defendant *Page 836 
would erect a memorial or monument in his memory, costing not less than $100. On May 8, 1941, the insured, Dossie Morris, died, and upon failure and refusal of the defendant to pay the death benefits provided by the policy, the beneficiary brought this suit, alleging that at the time of his death her husband was in good standing in the society, that all his premiums were paid, and that proof of death had been submitted to defendant along with her claim, but that her said claim was rejected. She prays for the sum of $1,000 to cover the death benefit, plus the sum of $100 to cover the erection of a monument or memorial at the grave of her deceased husband, plus interest at the rate of 6% per annum on both sums.
In its answer, the defendant admitted the existence of the policy on the life of the deceased, with the wife as beneficiary, but it alleges that this policy became void due to the delinquency of the deceased in the payment of his dues beginning in July, 1940.
Defendant avers further that under the provisions of the society's constitution, laws and by-laws, the monthly premiums are due in advance, and that a member becomes suspended and his beneficiary certificate is void if he fails to make any such payment on or before the last day of the month for which it is payable; that, however, any member so suspended may, within three calendar months from the date of his suspension, again become a member of the society by the payment of the delinquent premium, or premiums, provided he is in good health at the time of such payment and remains in good health for 30 days thereafter, and that such payment shall be held to warrant that he is at the time of making such payment, in good health, and to warrant that he will remain in good health for 30 days after making such payment. Defendant avers that the payment due in July, 1940, was not paid in time and that at the time of said delinquent payment the defendant was not in good health, but was suffering from carcinoma of the stomach, which caused his death, and that therefore, under the aforesaid provisions, the policy was not in force and the society was not liable for anything, except the payments made subsequent to July, 1940, when the policy was suspended.
The plaintiff answered this contention of defendant by maintaining that defendant has established the custom of accepting delinquent payments without objection, and by its actions and customs had induced the deceased to make those delinquent payments, and that the defendant is therefore estopped from setting forth that the deceased was suspended from the order and the policy voided by reason of such delinquency payments, accepted without question.
The trial judge referred this plea of estoppel to the merits of the case, and after hearing all the evidence, reached the conclusion that the society had accepted delinquent payments from the deceased as far back at least as June, 1939, and that by such acceptance, without protest, the defendant had waived the provisions of its constitution, laws and by-laws, and he in effect upheld plaintiff's plea of estoppel, and rendered judgment for plaintiff in the sum of $1,000, with interest at the rate of 5% per annum, instead of 6% as prayed for holding that the defendant is not an insurance company, but he refused to grant the $100 for a monument, holding that the right to enforce this provision belonged to the estate of the deceased and not to the plaintiff. He also held that the rider with reference to the monument did not provide for a money judgment, but for the specific performance of a contract.
From this judgment the defendant has appealed and the plaintiff has answered the appeal asking that the judgment be amended allowing her to recover the additional $100 for the monument.
It is shown by the evidence that the deceased member of the society, from June, 1939, to May, 1941, never paid his dues during the month they were due, with the exception of the last three months preceding his death. The record prior to June, 1939, was not available to plaintiff, and we have no showing with reference to whether or not delinquent payments were accepted prior to that date.
The evidence also shows that the deceased first began to complain of not feeling well in September, 1940, and that in the latter part of October, 1940, he was examined by Dr. Brock at McComb, Mississippi, who found nothing seriously wrong with him, and who advised him to go back home and continue his work. It appears that the deceased went back to consult Dr. Brock in November, 1940, at which time the doctor found that he had gained in weight and seemed to be improving. After *Page 837 
this second examination by Dr. Brock, the deceased went back home and continued to work as usual until the latter part of February, 1941, when he went to the Charity Hospital in New Orleans for further examination. In the latter part of March, 1941, he was operated on at the Charity Hospital and it was found that he had carcinoma of the stomach and that the disease had progressed so far that nothing could be done for him, and he was sent home. Up to the time of the operation it does not appear that the deceased or his family knew of any serious or fatal disease that he might have had. The deceased went to Dr. Brock's Infirmary in McComb, in April, 1941, and died there on May 8, 1941, from the cancer.
From the facts brought out by the evidence, particularly from the opinions of the doctors, it appears that the deceased began to suffer from the onset of the carcinoma in September, 1940; but it also appears that neither he, nor any member of his family, as heretofore stated, realized that he had any serious ailment until his operation in the Charity Hospital in March, 1941, and consequently the payments of the delinquent premiums were made with no intent to practice deception or fraud on the society, and no willful concealment on the part of the deceased member.
The defendant contends, however, that under the provisions of its constitution, laws and by-laws, quoted hereinabove, the member in effect warranted that he was in good health at the time of payment of delinquent installments, when, as a matter of fact, he was suffering from this cancerous condition. However, "The word `warranty' used in an insurance contract does not necessarily constitute a warranty, nor is the use of such word necessary to create a warranty. The use of the term is not conclusive of the character of the statement to which it refers, since there may be warranties without use of the word * * * and statements may not be warranties even though the word is used." 29 Am.Jur., Sec. 534. "Moreover, the courts do not favor warranties. If there is doubt, they lean against the construction of a statement by an insured or an applicant as a warranty, and unless it is clearly shown by the form of the contract, to have been intended by both parties to be a warranty, to be strictly and literally complied with, it with be held to be a representation." 29 Am.Jur., Sec. 533.
In this case, the defendant, in effect, contends that the deceased member, in order to become reinstated in making payments of delinquent premiums, had to warrant that he was in good health, not only at the time of making the payments, but for a period of 30 days thereafter, and that this warranty applies to ill health outside of his knowledge, as well as within his knowledge. We feel that such a construction is unreasonable and that all that the deceased member could have done was to warrant or represent that he was in good health at the time of making payments, within his knowledge, and that there was no reason for him to believe that he would not remain in good health for the next 30 days, which is the situation in this case.
From the facts brought out hereinabove we are convinced that the deceased member, at all times, acted in good faith in making payments of delinquent premiums and we are convinced, by the facts and circumstances, that the society accepted these payments without question and with the clear implication to the deceased that he was a fully reinstated member, and that in accordance with the decision of Soleyman v. Woodmen of the World, La. App.,3 So.2d 466, the course of conduct of both the society and the deceased was such as to fully justify the lower court in sustaining the plea of estoppel and rendering judgment in favor of the plaintiff.
As set forth in the Soleyman decision, supra, forfeitures are not favored in law and in cases of insurance where there is any circumstance that indicates a waiver of them, and certainly in the case at bar the facts and circumstances are such as to indicate that the society considered the policy reinstated at the time of the delinquent payments. It accepted these past due payments from month to month for almost two years without protest, and without notice or warning whatsoever, to the member.
With reference to the right of plaintiff to recover the sum of $100 for a monument to be erected at the grave of her deceased husband, we feel that her demand for that sum in cash is improper, especially in view of the fact that there is no showing that she has expended the sum demanded for the purpose set forth. We do feel, however, that under the terms of the contract she is entitled, as beneficiary, to have the society erect a monument or memorial at the grave of her deceased *Page 838 
husband, said monument to cost not less than $100; and we feel that under her prayer for general and equitable relief, we are authorized to give her judgment to that effect, since the fact of the death is clearly proved or admitted, and since the rider provides that "the Association will, upon receipt of due proof of the death of the said member, cause to be erected a monument or memorial to his memory, costing not less than $100.00".
For these reasons assigned, the judgment below will be amended by granting further judgment compelling defendant to cause to be erected a monument or memorial at the grave of the deceased, costing not less than $100, and as thus amended, the judgment is affirmed.