The suit is to recover on two funeral benefit policies issued in favor of Leo H. Hebert, Jr., the fifteen year old son of the plaintiff, the latter being the beneficiary. One of the certificates is for funeral benefits not to exceed $100 and the other for benefits not to exceed $200. Young Hebert died on December 7, 1940. The two certificates were issued on December 1, 1939, and it is admitted that plaintiff paid all the monthly dues or premiums on the certificates on the first of each month up to and including the premiums due on October 1, 1940. The premiums due November 1, 1940, were not paid until December 6, 1940, at which time the premiums for November and December were paid. The boy died on the following day, but there is nothing to indicate that the boy was sick on the day that the past-due premiums for November were paid nor is there any ground for assuming that the father acted in bad faith.
The certificates provide for a month's grace, so that the premiums for November were not over-due until December 2d. The policies contain provisions to the effect that the premiums are due and payable at the office of the company; that the collection of premiums is a matter of courtesy, and the failure of a collector to call will not be accepted as a reason of nonpayment. It is also provided that all premiums are payable in advance, and if the premiums are one month or more in arrears, the policy shall become void and lapse, and all premiums paid thereunder shall be forfeited to the company. But the policy can be revived by the payment of all past-due premiums and by furnishing evidence of the insurability of the applicant at the time of revival, and such applicant shall be entitled to the benefits only after two weeks from the date of revival, provided that he is in good health during the two weeks after such revival.
It is contended by the defendant that when the premiums were paid on December 6, 1940, the policies had lapsed for the failure to pay the November premiums on or before December 1st; that, if the payment of the premiums on December 6th had the effect of reviving the policies, such revival under the terms of the policies could have no effect until two weeks after these revival payments were made, and when young Hebert died on December 7th, the policies were under this two weeks suspension. The plaintiff concedes that the premiums for November were paid after they were due, but he contends that, by reason of the agreement on the part of the agent of the company when the policies were issued and the practice followed by the agents in calling at plaintiff's place of business to collect the monthly premiums, a custom and course of dealing had been established between plaintiff and the company whereby the former had a right to expect that a collector would call to collect the November premiums as had been done in collecting all previous premiums; that he was entitled to be notified if any change in this practice was to be made, and that no such notice was given and no collector called to collect the November premiums until December 6th, at which time the premiums were paid to the collector and accepted by him; that by reason of this situation, the company waived the provision of the policies providing for a forfeiture for nonpayment of premiums on the due date and is estopped from now claiming such forfeiture.
The trial court rendered a judgment in favor of plaintiff for the amount sued for, and the defendant has appealed.
The plaintiff operated a grocery store in Baton Rouge, and the agent who wrote the policies testified that he had arranged with plaintiff that he or some other collector would come by plaintiff's store every month and collect the premiums. This was done and the record shows that the premiums were paid at the store on the first of each month up to and including October, 1940. Mr. Hebert had a clerk named Blanchard and both Hebert and Blanchard testified that the latter was authorized to make payments when Mr. Hebert was not in the store. While there is some evidence by some defense witnesses tending to show that Blanchard stated he did not have authority to make these payments for Mr. Hebert, yet in view of the positive testimony of both Hebert and Blanchard that the latter did have authority to make these payments, we think the trial judge was correct in finding that the clerk had such authority. Indeed, there is evidence to the effect that Blanchard made some payments for Hebert when the latter was not in the store.
There is evidence to show that agents of the company called at the store several times during the month of November to collect the premiums for that month and *Page 292 
that the premiums were not collected either because no one was in the store to pay the premiums or because Hebert would not see the collector who called at one time while he was in the store. While there is considerable conflict in the testimony on this point, we are convinced that neither Hebert nor his clerk was ever told by any agent of the company that the custom and agreement for calling at the store to collect the premiums was to be discontinued, and that all premiums thereafter were to be paid at the office of the company. Indeed, any such notice is negatived by the fact that the agents of the company did call on December 6th and collected the premiums due for both November and December. The policies were in full force during the month of November by reason of the grace period, and no notice was ever given to Hebert that the policies would lapse if he did not pay the premiums at the office of the company on or before December 1st.
It is well established that where a custom or practice is built up on the part of insurance agents in receiving overdue premiums without objection and without insisting on the forfeiture provisions in the policy, which custom has produced in the mind of the policyholder the belief that a strict compliance with the prompt payment of premiums will not be exacted, the insurer will be deemed to have waived the right to claim a forfeiture, or will be estopped from enforcing the same, even though there is a provision in the policy that agents cannot waive forfeitures and that receiving overdue premiums is merely an act of courtesy. Soleyman v. Woodmen of the World, 3 So.2d 466; Morris v. Sovereign Camp W.O.W., La.App., 9 So.2d 835, and same case,203 La. 507, 14 So.2d 428. While the defendant's counsel concede this principle, they contend that there is a difference in regard to a custom, practice or agreement as to calling at the place of business or home of the insured by collectors to collect the premiums where the policy requires the premiums to be paid at the office of the company.
We are in agreement with the statement made by the Court of Appeal of the Second Circuit in the case of Lewis v. Louisiana Industrial Life Insurance Company, 4 So.2d 755, to the effect that where the agent of an insurance company regularly calls upon the insured for payment of premiums, the insured has a right to act upon the custom thus established, and he is not required to make the payments in a different manner unless prior notice is given him of the intention to abandon the custom.
Forfeitures are not favored by the law. It has been held that where an insurer pursues a course of conduct over a considerable period of time of giving notice to the insured of the due date of premiums, which practice leads the insured honestly to believe that he will continue to receive these notices, the insurer will be estopped from claiming a forfeiture if the premium was not paid on the due date because the insured was relying on such notice and would have paid the premium had he received the usual notice, although the insurance contract provided that no such notice was required. Gunther et al. v. N.O. Cotton Exchange Mutual Aid Association, 40 La.Ann. 776, 5 So. 65, 2 L.R.A. 118, 8 Am.St.Rep. 554; New York Life Ins. Co. v. Eggleston, 96 U.S. 572, 24 L.Ed. 841.
The same principle should apply where by custom or agreement the insurer's agents have called at the residence or place of business of the insured over a considerable period of time to collect the premiums and the insured has been led to believe that this method of collecting the premiums would be continued. It would be unfair and unjust to permit a forfeiture of the policy for failure to pay one premium on the due date where the insured was relying on the custom and would have paid had the agent called in the usual manner. Under such circumstances, the insured is at least entitled to notice from the insurer of the intention to discontinue the practice and rely on the strict letter of the contract.
In the present case, plaintiff was in good faith in relying on the collectors to call and collect the premiums when due, and he had a right to assume that his policies would not be permitted to lapse without some notice or putting in default relative to a change in the manner of collecting the premiums from him. He had paid promptly and regularly eleven premiums when called upon to do so and paid the November premiums the first time that he was contacted by the agents of the company at his store. It is reasonable to assume that he would have paid the November premiums during that month had *Page 293 
he been contacted for that purpose by the agents of the company, and his payment of these premiums on December 6th and the acceptance of the payment by the company had the effect of a waiver or estoppel on the part of the company from claiming a forfeiture of the policies for failure to pay the November premiums on the due date. The policies were in effect when young Hebert died on December 7, 1940.
The point is made that there is not sufficient proof to show that the funeral bill amounted to the face amount of the policies. It is shown that the Woodruff Funeral Home was the funeral director and that plaintiff paid $100 on the funeral bill, and the Funeral Home has collected or is attempting to collect the balance of the funeral bill from the plaintiff. While plaintiff could not remember the exact amount of the funeral bill, he said, "If I remember right it was $311.00, but I couldn't exactly say." In view of the fact that there is no evidence tending to show that the funeral bill was less than the face value of the policies, we think the above facts and circumstances justify the conclusion that this bill was not less than $300.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of defendant in both courts.