HAMITER, Justice.
In this suit Saluce Manuel seeks to enforce payments for total disability, through confinement to his home, under a policy of insurance issued to him in September, 1965 by the American Income Life Insurance Company, the defendant herein.
The trial court rendered judgment in plaintiff’s favor ordering defendant to pay him the sum of $200 per month until plaintiff’s disability ends, together with payments then due and unpaid.
The judgment was affirmed on appeal. 212 So.2d 169.
The casé is before us on a writ of certiorari issued at the instance of the defendant. 252 La. 942, 215 So.2d 122.
*319 Following the issuance of the policy the plaintiff, who was employed as a school bus -driver and who also farmed a tract of land owned by him, regularly paid premiums until April 9, 1967, at which time he suffered a severe myocardial infarction which required hospitalization for approximately three weeks. From then he has been totally disabled to carry on his former occupations of bus driving and farming.
He made application to the defendant insurer for benefits under the policy. Initially the defendant refused to make any payments whatsoever, it asserting that plaintiff had intentionally failed to disclose a preexisting ailment which would have made him uninsurable; and this was the principal defense when the instant suit was filed to compel compliance with the contract. But it was rejected by both the district court and the Court of Appeal.
The defendant later abandoned such defense, and in its application here it relied on its alternative one which was that the plaintiff’s concededly total disability was non-confining, and for it payments were due for only four months under Part 11 of the policy — not (as held by the district court and Court of Appeal) for the duration of the disability under Part 10.
The contract in question is designated as one for “Personal Compensation Disability”, and it insures the plaintiff-against loss of life, limb or sight from accidental bodily injuries or against loss of time caused by such injuries or by sickness.
Part 10 provides that if the sickness causes continuous, total disability and total loss of time, and requires continuous confinement within doors and the regular attendance of a licensed physician, the company will pay the stated monthly benefit ($200) for as long as the insured is so disabled and confined. The phrase “continuous confinement within doors” is defined to mean that “such sickness shall necessitate whole, total and continuous confinement by the insured within doors, provided that the insured’s going to the office of a licensed physician during the disability and confining sickness shall not be considered as an interruption of the confinement.”
Part 11 states that if the sickness results in total disability and loss of time, but does not require continuous confinement within doors, the company will pay the recited monthly benefits while the insured is disabled, not, however, exceeding four months for any one illness.
The defendant contends that because of the presence of the two clauses in the contract, both relating to and requiring total disability, the “confinement indoors” provision of Part 10 cannot be considered as having been inserted for evidentiary purposes to determine the extent of disability, as had been the interpretation given by this court when only one such clause was con *321 tained in the policy. In this manner the defendant seeks to distinguish our earlier decisions which gave the term “house confinement” or “confinement indoors” a liberal construction. See Newton v. National Life Insurance Company, 161 La. 357, 108 So. 769 and Lewis v. Liberty Industrial Life Insurance Company, Inc., 185 La. 589, 170 So. 4, 107 A.L.R. 286. And the defendant argues that, consequently, the phrase as used in the instant case in Part 10 means virtually absolute, uninterrupted, confinement indoors (other than for the excepted visits to the doctor), and that any permissive or occasional excursion out of the house would render the insured’s sickness a non-confining one governed by Part 11. Clesi v. National Life and Accident Insurance Company, Inc., 195 La. 736, 197 So. 413 is cited in support of this argument.
The question posed by this defense requires that we determine whether a strict and literal interpretation should be given to the “house confinement” clause, as urged by defendant, or whether it should be accorded a liberal one which would render effective the benefit provisions of Part 10 of the policy, even though the disabled insured does not remain strictly and uninterruptedly within the four walls of his home.
An extensive annotation in 29 A.L.R.2d 1411 et seq. treats of the cases dealing with the problem involved. It encompasses “all forms and types of the provision” (the “house confinement” clause), particularly those cases dealing with policies of the “two-clause” variety. Therein the author of the note states: “While there is considerable authority supporting the view that the ‘house confinement’ clauses are to be literally construed, so as to preclude recovery where the insured for any reason, with the possible exception of emergencies beyond his control, leaves the house, the great majority of cases support the so-called liberal construction view.” Those listed as falling within such interpretation indicate whether they are of the “one-clause” or “two-clause” variety. Most of them deal with the latter type.
The annotation points out that the courts in imposing the liberal interpretation arrive at such conclusion by a variety of reasoning. Thus, some cases state that “substantial confinement is a sufficient compliance with ‘house confinement’ clauses, or, conversely, that there must be substantial confinement as a condition of recovery by the insured”; some hold that “ ‘house confinement’ clauses are intended to describe the required extent of the insured’s illness or other disability, rather than to impose a strict limitation upon his conduct”; while others declare that “ ‘confinement’ is equivalent to ‘inability to work’ ”, and that “house confinement is merely an evidentiary requirement, designed to show with certainty the insured’s total disability.” It is further pointed out that in many cases the various theories have been treated as not *323 mutually exclusive, with two or more being cited with approval in the same decision.
The mentioned note includes the following observations: “Two quite generally accepted doctrines, with reference to the insured’s right to recover under a specific factual situation, emerge from the cases.
“The first of these is the doctrine that ‘house confinement’ clauses are not violated where the insured occasionally departs from within the four walls of the house for the purpose of getting fresh air and exercise, in a bona fide attempt to improve his health, particularly where such departures are undertaken by the direction of a physician, or where he visits his physician’s office or a hospital for examination and treatment.
“On the other hand, where the insured is able to, and does, leave his house for primarily business or other non-therapeutic records, he can no longer be considered within the scope of a ‘house confinement’ clause.”
The discussed annotation was prepared in connection with a case decided in 1951. A compilation of more recent decisions in the “Later Case Service” of this treatise (published in 1965) reveals that all of the later decisions apparently follow the liberal rule and that at least one jurisdiction (Arizona), which formerly applied the strict or literal interpretation, has reversed itself and overruled prior jurisprudence to the contrary. See Occidental Life Insurance Company v. Bocock, 77 Ariz. 51, 266 P.2d 1082. ■
It appears to us that in view of the purpose to be served by such insurance, and the intention of the insureds when securing it, that the liberal interpretation rule is the better one to follow, particularly as is expressed by the Supreme Court of Idaho in Penrose v. Commercial Travelers Insurance Company, 75 Idaho 524, 275 P.2d 969, that “so long as the insured was wholly and continuously disabled from performing any and every duty pertaining to his occupation as a farmer (which the court found and the evidence supports) and did not leave his home except for therapeutic reasons other than on a few brief occasions disclosed by this record, he was substantially confined to his home by reason of such illness and that such constitutes a sufficient compliance with the house confinement provision of the policy; we further hold that there must be substantial compliance under the house confinement clause as a condition of recovery * * * »
Indeed, it appears that this court has already aligned itself with those cases which give a liberal interpretation to the confinement clause. Thus, in Bankson v. Mutual Beneficial Health and Accident Association, 208 La. 1008, 24 So.2d 59, we pointed out that there was testimony to the effect *325 that the insured was “substantially” confined within doors, and we observed:
“ * * * It was never the intention of the parties that the clause in controversy should be given an unreasonable or absurd construction * * *. We think the parties intended by this clause, and we so construe it, that the insured would be permitted to recover under Part I of the policy if his disability by reason of illness was such that it would ordinarily require confinement within doors, and the fact that the patient is instructed or allowed to leave the confines of his home for the purpose of getting fresh air and sunshine, as in the case of tuberculosis, or to take walks to prevent atrophy and weakness of the muscles, as in this case, does not necessarily deprive the insured of his right to recover under Part I of the contract. Having reached this conclusion, it is immaterial whether in taking these walks the plaintiff went around the block to the barber shop, or to the doctor’s office. * * * ”
We do not believe that Clesi v. National Life and Accident Insurance Company, supra, is authority for the contention of the defendant. In that case the court showed the existence of facts which, even under the “substantially confined” doctrine would not have permitted recovery of benefits. It was so distinguished in the Bankson case. But conceding arguendo that there might be some language in the opinion tending to support an argument for literal interpretation it is purely dicta and must be considered as having been discredited by the later specific holding in Bankson v. Mutual Beneficial and Accident Association, supra.
With this interpretation of the policy in mind we turn now to the facts of the instant case to determine whether or not the plaintiff was substantially confined to his home as a result of his illness, there being no dispute that he is totally incapacitated to carry on his occupation as bus driver or to engage in farming activities.
Following his discharge from the hospital in the latter part of April, 1967 he was required to remain in bed for three weeks at home. Thereafter he was gradually permitted increased activity as his condition warranted. Since then he was seen by his doctor numerous times, and it was necessary for him to go to the hospital for emergency treatments three or four times. His condition requires that he take some seven or eight different medications for his various ailments, including medicine for improving the circulation of blood to the heart, for his blood pressure, and for aid in the event of chest pains.
His physician testified that while he did not know how far plaintiff could walk, that “I do know that I told him to slowly try to increase his walking and his exercise tolerance, that this is good for any patient like him”, and that the exercise would be *327 “beneficial”. He further stated that his instructions to plaintiff were:
“To take his medication, he’s to be up and around, doing what he feels like. If he develops any chest pain he’s to take nitroglycerine, and in five minutes another one, and in five minutes the third one, and if that doesn’t relieve the chest pain to get in touch with me. And that’s about it.
Q. What about physical activity?
A. He’s to walk and get out and get around. He’s not to do anything heavy or strenuous.”
When the doctor was asked if the plaintiff could stay up three or four hours at a time he replied: “It depends on how he feels. If he’s having chest pain then he shouldn’t do anything, take it easy, sit down and rest; if he’s not having chest pain he can stay up three or four hours.”
Plaintiff testified that since his initial attack he has not been able to do any work, or engage in any prolonged activity; that for the most part he sits around home, except for an occasional visit to his daughter’s house, a visit to his two neighbors (one at a nearby store), and to go to the mail box. His daughter lives about 35 miles away; and when he goes there, not more than once a month (sometimes less often), he is driven by his wife.
The neighbors live about three or four blocks away. His visits with them occur not more than once a week, and he stays there about an hour each time. He walks to the mail box on the days when he feels like it. But even on such occasions he has experienced fatigue or chest pains requiring that he sit down and rest before returning home. He lies down to sleep about an hour in the morning and about two hours in the afternoon. Since his first attack he went once to look at his crops, with his wife driving him. He said that the walking outdoors he does is for exercise as prescribed by his doctor.
The plaintiff’s testimony as to the extent of his activities was corroborated by his wife. She also testified that they no longer visit friends as they formerly did.
There is no countervailing evidence whatsoever. No witnesses were called by the defendant, except the agent who sold the policy. His was a futile attempt to sustain the principal defense.
In our opinion the facts of this case clearly bring it within the language of the Bank-son case, supra; that is, that the insured’s disability by reason of illness was such that it would require confinement within doors. In other words, he was substantially confined to his home; and the fact that he left the confines thereof for the purpose of getting fresh air and sunshine, and to take walks on the advice of his doctor for therapeutic reasons, does not deprive him of his right to recover under Part 10 of the contract.
*329 Much emphasis is placed in defendant’s brief, as it was in its application for certiorari, on isolated parts of the testimony of the doctor, particularly the statements that plaintiff might attend to some sort of business not requiring much activity; that he could go to the field and walk around for an hour or so looking at his crops; and that he was not continuously house confined. However, a fair reading of the testimony of the physician, as a whole, was to the effect that plaintiff could do these things if he felt able to do so, and that he should immediately desist if he felt fatigued or suffered chest pains, with the distinct possibility — even probability — that these symptoms would occur. This testimony is but in line with what is commonly known to be the treatment in such heart cases— to let the patient “pace himself”, and to increase his activity as he is able, consistent with his reaction thereto.
The facts of this case, as revealed by the record, are that this plaintiff was never able to carry on more than the minimum activities prescribed by his physician. Moreover, the doctor’s reference to plaintiff’s not being confined to the house was but consistent with his testimony that he advised his patient, for the betterment of the latter’s condition, to get out and get some mild exercise.
Under the circumstances revealed by the record we find that the plaintiff is substantially confined to his home, and that the occasional trips outside its confines would not deprive him of the benefits provided by Part 10 of the policy.
For the reasons assigned the judgment of the Court of Appeal is affirmed at defendant’s costs.