REDMANN, Judge.
Plaintiff, awarded benefits under a disability “income protector” insurance policy, appeals from that portion of the judgment which denied him statutory penalties and attorney’s fees.
Defendant neither appealed nor answered the appeal.
The issue is whether defendant had “just and reasonable grounds”, LSA-R.S. 22: 657, to refuse payment of the contractual benefit.
Defendant argues that it had such grounds because plaintiff was not “continuously and necessarily house confined” as required by the policy.
It appears now settled in our jurisprudence that literal compliance with a “house confinement” clause is not necessary. “Substantial confinement” will suffice. Manuel v. American Income Life Ins. Co., 254 La. 316, 223 So.2d 817 (1969).
Defendant argues, however, that the reasonableness of its denial of plaintiff’s claim must be considered in light of the law as it existed in 1964-65, when the claims were filed. We agree; see Craten v. Aetna Life Ins. Co., 186 La. 757, 173 So. 306 (1937).
In Manuel the Supreme Court reviewed the jurisprudence on interpretation of house confinement clauses and observed:
“Indeed, it appears that this court has already aligned itself with those cases which give a liberal interpretation to the confinement clause. Thus, in Bankson v. Mutual Beneficial Health and Accident Association, 208 La. 1008, 24 So.2d 59, we pointed out that there was testimony to the effect that the insured was ‘substantially’ confined within doors * 223 So.2d at 820.
The court in Bankson had held that
“ * * * a person may be totally incapacitated and confined to his house within the meaning of a policy although he takes some exercise outdoors or visits his physician, provided he is entirely incapacitated for work or business on account of his injury or illness.” 24 So.2d at 62.
Thus, since at least 1945, there was Louisiana jurisprudence requiring a liberal interpretation of confinement clauses. In fact, long before this time there was ample authority to the effect that such clauses were merely indicative of the degree of ill *381 ness or disability required. See Newton v. National Life Ins. Co., 161 La. 357, 108 So. 769 (1926); Lewis v. Liberty Industrial Life Ins. Co., 185 La. 589, 170 So. 4 (1936); Powell v. Liberty Industrial Life Ins. Co., 197 La. 894, 2 So.2d 638 (1941).
In Lewis v. Louisiana Industrial Life Ins. Co., 4 So.2d 755 (La.App.1941), the insurer had rejected the insured’s claim because she had been observed sitting jn a rocking chair on her front porch fully attired. Awarding both benefits and penalties, the court commented :
“We do not believe the facts of this case warranted defendant in not paying plaintiff the benefit due her * * *. Unquestionably, she was sick to some extent for several weeks. It may be true that within the terms of the policy, she was not confined to bed for this entire period. The evidence relied upon by defendant’s agents to induce them to believe she was not confined to bed, was insufficient to constitute the ‘just and reasonable grounds’ required in the statute. They should have made further investigation into her physical condition before acting so drastically against her.” (Emphasis added.) 4 So.2d at 759.
See also: Campasi v. Mutual Benefit Health and Accident Ass’n, 207 La. 758, 22 So.2d 55 (1945); Ayres v. N. Y. Life Ins. Co., 219 La. 945, 54 So.2d 409 (1951); Phelps v. Sou. National Ins. Co., 83 So.2d 463 (La.App.1955); Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113 (1956).
And in Fontenot v. Wabash Life Ins. Co., 243 La. 1049, 150 So.2d 10 (1963), our Supreme Court explained the reasoning and public policy embodied in the statutory penalties:
“Insurance companies, and not the insured, prepare the contracts of insurance ; and health and accident policies in particular should as far as possible, be free from ambiguities and uncertainties so that the insured, usually an ordinary layman, can tell whether any sum is due to him as a result of accident or sickness. If such a policy is vague and uncertain as to the extent of coverage, and if because of such uncertainty sick benefits and hospital charges are not paid and the insured must resort to the courts to ascertain the meaning of the policy, then, in effect, he is being denied the benefits of the insurance at a time when most needed — that is, at the time of accident or resultant bodily injury or sickness; at a time when such benefits are needed to provide the insured with essential medical and hospital care which possibly due to his financial condition would be denied to him without such insurance. It is for these reasons that health and accident policies should be written in such clear terms that a misinterpretation of the insurance company’s liability could not occur.” 150 So.2d at 12.
Of course, the insurer has a right to test policy provisions and have them judicially interpreted, but not at the expense of the insured — unless “just and reasonable grounds” exist; Campasi, supra.
In the instant case, plaintiff’s treating physician testified that during the period of disability plaintiff was unable to engage in manual labor and was confined to his house except for office visits. Plaintiff also testified he was house confined by the doctor. Defendant refused to pay the claims primarily because of its agent’s report that plaintiff was not house confined.
The agent testified that the first three claim forms submitted by plaintiff were received in defendant’s district office on December 20, 1965. He said he visited plaintiff’s home on that same date and again later in the week, but each time found no one home. He gave plaintiff “the benefit of the doubt as being house-confined” for purposes of the first two claims. On December 27, he again visited plaintiff’s home and found him “outside of his house in the street with the hood raised on his car with *382 a wrench in his hand, fooling with the motor or something inside the car, under the hood.” He reported plaintiff as not being house confined on that visit, and based on that report the defendant refused to pay any of plaintiff’s claims.
The agent’s testimony is partially contradicted by his own written reports. He stated that the first three claim forms were not received at defendant’s district office until December 20, 1965. Actually, however, only one of the forms is stamped as received on that date. One is not dated for receipt, and the other is dated as received on October 26, nearly two months before. Also, each claim form has space on the reverse for the agent’s report. Two of these forms show that they were investigated on October 27, 1965, and plaintiff’s signature appears thereon, also dated October 27. This in itself indicates that either plaintiff was in fact home on that date or that the agent falsified the reports. (The evidence shows that plaintiff was frequently, sometimes daily, at his doctor’s office in the middle of the day for treatment, at which times of course the agent would not have found him at home.)
Additionally, from an inter-office letter of December 16, 1965, it is clear that defendant’s local staff manager (now deceased) had visited plaintiff at his home on December 9; and the agent’s testimony was that he visited plaintiff with the manager. This casts further doubt on the agent’s testimony.
Most important, defendant did not cause a medical examination of plaintiff to determine the nature and extent of his disability. Nor did defendant question or discuss the matter with plaintiff’s physician. There is absolutely no medical evidence to rebut that of plaintiff’s treating physician. Nor did defendant verify in any other way, by inquiry of neighbors, surveillance, or the like, that plaintiff was not generally or substantially house confined.
We think that under these circumstances defendant may have had just ground for being suspicious, but, as several of the cited cases pointed out, defendant did not have “just and reasonable” grounds to deny plaintiff’s claims without further investigation or a medical examination. Therefore the penalties provided by R.S. 22:657 should be imposed.
However, the statutory provision for “a penalty * * * of double the amount of the health and accident benefits due” does not entitle plaintiff to a total triple the benefits, but only double the benefits; Frey v. Manhattan L. Ins. Co. of N.Y., 182 La. 821, 162 So. 633 (1935); Thomas v. Universal L. Ins. Co., 201 So.2d 529 (La.App.1967).
Accordingly that part of the judgment which alone is appealed from is reversed, and the entire judgment is recast to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff Sylvester West and against defendant Lincoln Income Life Insurance Company in the full sum of nine hundred thirty-five and 70/100 dollars ($935.70) with legal interest from judicial demand, together with attorney’s fees of three hundred fifty dollars ($350.00) and all costs.
Reversed in part and recast.